Roger Dale CAPLES, Appellant,

v.

UNITED STATES of America,
Appellee.

Prentice James CAPLES, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 24660, 24795.

United States Court of Appeals
Fifth Circuit.

March 6, 1968.

W. C. Keady, James L. Robertson, Greenville, Miss., for appellant R. D. Caples.

Philip Mansour, Greenville, Miss., for appellant P. J. Caples.

H. M. Ray, U. S. Atty., Oxford, Miss., for appellee.

Before RIVES and GODBOLD, Circuit Judges, and HUGHES, District Judge.

HUGHES, District Judge:

This is an appeal by Roger Dale Caples and Prentice James Caples from their conviction by a jury on a single count in-

dictment. (Armed robbery of a federally insured bank).[1] We affirm.

The Government's proof demonstrated the following facts:

Shortly after one o'clock the afternoon of September 14, 1966, Mrs. Beatrice White, librarian, arrived at the library in Moorhead, Mississippi. The library was just north of the Bank of Moorhead, hereinafter called Bank, facing on the same street as Bank. She parked next to an automobile with four boys in it. Shortly afterward she saw three of the boys get out of the car and proceed toward the Bank, the driver remaining in the vehicle. Later she saw them running from the direction of the Bank, getting into the car, one saying "Drive, boy, and drive fast." At the trial she was unable to definitely identify either Roger or Prentice Caples, appellants.

After the three boys had gotten out of the automobile they were next seen by Harry Collins, a druggist, in his drug store, which was located adjacent to the Bank. He also observed them looking in the window. At the trial he positively identified the three he had seen as the two Caples and their companion, James Steed.

Two Bank employees, Mrs. Jane Harpole and Mrs. Lillian Moore, and a Bank officer, William A. Topp testified to substantially the same details of the robbery. Steed and the Caples entered the bank and forced the personnel to lie on the floor. Prentice Caples approached one of the teller's windows, pointing a gun at Mrs. Moore, as he cursed and told Mrs. Moore and Mrs. Harpole to get to the floor. Money in the sum of $6,893.00 was taken by Steed from a bank drawer in the teller's cage. The Bank was de-

scribed as relatively small with an open area of approximately 26 by 34 feet. At the trial Mr. Topp identified Roger Caples and James Steed, and Mrs. Harpole and Mrs. Moore identified both Caples after having described them to the jury.

A customer of the Bank, Mrs. Lula Mae Towery, came into the Bank while the three boys were there. She was commanded to lie down, which she did immediately. She saw only the boy near the door, whom others had identified as Roger Caples. At the trial she described him but was unable to identify him.

As the automobile carrying the boys left Moorhead it was seen by Mrs. Jessie Evans, who was sitting on the curb in front of her house. She described the color of the automobile and identified both Caples boys at the trial as having been in the car.

Shortly after 2:30 in the afternoon a car containing four boys stopped for gas at Luster's Gulf Service Station in Belzoni approximately 25 miles from Moorhead. Luster had had a radio report of the robbery and for that reason he took special note of the boys, taking down the license number. At the trial he described the automobile and identified both the Caples.

An office deputy in the sheriff's office at Indianola testified that the license number taken down by Luster was in fact registered to Steed.

James Steed testified that during the morning prior to the robbery, while the four boys were riding around, the Caples, May and he had discussed robbing this particular bank. He also testified fully with reference to the robbery.

Several of the witnesses testified that the Caples as well as the other two boys

1. The crime charged in the indictment: "That on or about September 14, 1966, in Sunflower County, in the Northern District of Mississippi, Roger Dale Caples, Prentice James Caples, James Kenneth Steed, and Travis Wayne May, aided and abetted by each other, did by force and violence and by intimidation take and cause to be taken from the presence of W. A. Topp, Jane Harpole, and

Lillian Moore, six thousand three hundred and ninety-three dollars in money, belonging to and in the care, custody, control, management and possession of the Bank of Moorhead, a branch of the Grenada Bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation; in violation of Section 2113 (a), Title 18, United States Code."

had been drinking beer, but none said they were intoxicated or had been drinking heavily. Steed said they had been drinking beer during the morning and had continued to drink after the robbery, but even Luster, who saw them following the robbery, testified that while each had a can of beer in his hand, none appeared to be intoxicated.

The principal contentions of appellants for reversal are (1) that the arrest, search and seizure were illegal and voided the conviction; (2) that the line-up occurring immediately after the arrest was illegal because of failure to give proper warnings to defendants and to give them an opportunity to have an attorney present; (3) that the specific identifications of defendants were erroneously permitted because such indemnifications were tainted by an illegal line-up; (4) that the defendants had no intent to commit the crime and the Court's instructions failed to correctly charge the jury on specific intent and intoxication. In our opinion these contentions are without merit.

With respect to the first, appellants argue that their arrest was illegal because it was based neither upon probable cause nor a warrant, and the arrest being illegal, the search which followed (resulting in the discovery of the stolen money) was violative of the Fourth Amendment. Because of these abridgements of their rights, it is contended, the entire prosecution denied them due process.

■■ It seems to us unnecessary to consider the legality of the arrest or search and seizure, since the government's case was in no way dependent upon them and there was no testimony in connection therewith. The evidence introduced by the prosecution was solely from persons who observed the defendants before or after the robbery and from employees who actually witnessed the robbery. No physical evidence taken from appellants and their accomplices was introduced and no statements of appellants were offered.

There can in our opinion be no complaint that either the arrest or search and seizure was illegal.

Contentions (2) and (3) relating to the line-up will be considered together.

■■ Appellants do not argue that line-ups per se are illegal. It is their contention that their being placed in a line-up without having been advised of their right to have counsel present made the line-up illegal.

It is true that the Supreme Court in various recent cases has construed the accused's Sixth Amendment right to counsel to apply to "critical" stages of the proceedings. In Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, it was held that the right to counsel is guaranteed at the point where the accused is being interrogated following requests for counsel and prior to arraignment. Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694, announced the principle that the right to counsel attaches "when the individual is first subjected to police interrogation while in custody at the station * * *." In both these cases confessions obtained as a result of the questioning had been admitted in evidence at the trial. In both, the Supreme Court held that without counsel, or without the defendant having been given the opportunity to have counsel the statements were inadmissible.

In this case we do not have the situation which existed in *Escobedo* or *Miranda*. In the first place, at the time of the line-up the case had not reached the accusatory stage. Its purpose, as stated by the able district judge, " * * * was to aid the responsible officers in making a determination as to whether this case would, in fact, reach the accusatory stage or not." At the time the Caples were tried no case had held that there was a necessity for the accused to be warned of his right to counsel during its preparatory stage.[2]

2. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) held that the line-up was a critical stage of the proceeding, but Stovall v. Denno,

388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) decided the same day held that *Wade* was not retroactive.

More important, however, in the Caples trial no evidence was introduced that was a product of the line-up. In fact it was not even alluded to by the prosecution or by the defense. Counsel and the trial judge were so careful to keep from the jury any reference to the line-up that they blocked from a statement of Mrs. Moore introduced into evidence, a paragraph dealing with the line-up. Since no use was made of it in the development of the prosecution's case, there is no merit to appellant's contention that conducting the line-up without warning defendants of their right to counsel voided the trial.

Prior to the introduction of evidence bearing on the identification of the defendants by those who had viewed the line-up, appellants' counsel had advised the court of their objection to these witnesses' identifying defendants and had requested a hearing in chambers. This request was granted.

In chambers the evidence revealed that the four boys arrested in connection with the robbery had been placed in a line-up with seven other persons about five o'clock of the afternoon of the robbery, shortly after their arrest. Those in the line-up were of various ages, height, dress and appearance. The line-up was viewed separately by the three bank employees, Mrs. Evans, and Mrs. White. None was given any suggestions with reference to the persons in the line-up and each stayed in the room only a few minutes. Those in the line-up were not required to make any statement as they were being viewed. None of the viewers had seen any of the defendants in the police station prior to going into the line-up room.

It is the contention of appellants that the identification of defendants in court by those who viewed the line-up should not have been permitted because tainted by the line-up. The testimony taken in chambers clearly shows that this contention is without merit. Each witness testified as to the facts outlined above, and all were emphatic in their statements that the line-up did not aid in their identification.[3]

Appellants rely strongly on the case of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), modifying 358 F.2d 557 (5th Cir. 1966). The Caples case was tried after the Fifth Circuit decision of *Wade* and before the Supreme Court decision. The date of the trial, however, is immaterial as the circumstances in the two cases are completely different. In the *Wade* case the line-up was some six months after the incident upon which the prosecution was based. Wade was seen by some of the viewers in the City Hall prior to the line-up, and those in the line-up were required to speak words which were alleged to have

---

3. On the question of identification the testimony was as follows:

Q. to Mr. Topp: "As a result of a line-up * * * that strengthened * * * your ability to describe these boys, isn't that correct, sir?"

A. "No, sir, it didn't. It didn't strengthen my description of them because I had already seen them enough to identify them."

Q. to Mrs. Harpole: "After you had gone to this line-up * * * then you were better able to describe these boys, were you not?"

A. "Well, I had no trouble identifying them, as you can tell by the record there."

Q. to Mrs. Evans: "And you are able to positively identify these two people here. * * *"

A. "Yes, sir."

Q. " * * * as being the people that passed your house?"

A. "Yes, sir."

Q. to Mrs. Moore: "Had it not been for that line-up you probably could not have identified anybody, isn't that correct?"

A. "No. I could identify Roger Caples and the Steed boy any time."

Q. "You can tell us now that your knowledge that you got at the City Hall that afternoon could be blanked out of your mind * * * and that, notwithstanding that knowledge, you could still identify these people?"

A. "Yes, sir."

Mrs. White was not questioned in chambers as she did not identify any of the defendants in court.

**1022**

been said by the participant in the robbery at the time of the incident. These three elements were the chief factors in the *Wade* decision which differentiate it from the *Caples* case. Additionally, counsel had been appointed for Wade, and without question Wade had reached the accusatory state. Despite these facts counsel for Wade was not notified. If the facts in *Wade* had been similar to the *Caples* case we are confident the result would have been different.

If, however, *Wade* has any application it does not affect the disposition of this case because the trial judge followed exactly the procedure directed by the Supreme Court in vacating the conviction of Wade. The trial court in *Wade* was directed to have a hearing

> "to determine whether the in-court identification had an independent source or whether in any event the introduction of the evidence was harmless error * * *."

In the *Caples* case the trial judge determined in chambers that the in-court identification by the witnesses "had an independent source."

We find no error in the manner in which the line-up was conducted or in the identification of defendants in court by the viewers of the line-up.

■ The third contention of appellants was that the trial court erred in its charge to the jury on the question of specific intent and the defense of intoxication.

On the two points raised by the appellants the trial court instructed the jury as follows:

> "With respect to such a crime as the one that's charged in this indictment, specific intent must be proven before there can be a conviction.
>
> A person who knowingly does an act which the law forbids or knowingly fails to do an act which the law requires to be done, intending with bad purpose either to disobey or to disregard the law, may be found to act with specific intent. * * *

> I should tell you also that intoxication or drunkenness alone is not a defense to the type of crime with which we're concerned as charged in this indictment. The fact that a person may have been intoxicated at the time of the commission of a crime such as the one with which we're concerned may tend to negative the existence of specific intent. So, evidence that a defendant acted or failed to act while in a state of intoxication is proper for consideration by the jury in determining whether or not the specific intent required under the law was present, that is to say, in determining whether the defendants acted or failed to act with specific intent as charged in this case."

Appellants' quarrel with the court's definition of specific intent is that it emphasized intent to do the act rather than intent to disobey the law. However, we find no misplaced emphasis. The court merely emphasized different elements of specific intent in different paragraphs. The sum total of the court's instructions on specific intent constitutes a fair and understandable charge on that issue.

■ Next, appellants argue that the effect of intoxication on specific intent was improperly charged because the court instructed that it *"may tend to* negative the existence of specific intent." [Emphasis added] They contend in their brief that the instruction should have been that intoxication "will" negative specific intent. However, use of the word "will" would have made a finding of intoxication conclusive on the specific intent question. The addition of the words "tend to" admittedly was unnecessary and perhaps undesirable, but contrary to defendants' assertion, those words do not connote that intoxication will never completely negative specific intent.

In any event, the charge as a whole conveys the proper instruction. The jury was told that the intoxication evidence could be considered in determining if de-

fendants possessed the requisite specific intent. Since the jury must have understood that it had to make an affirmative finding on the specific intent issue to convict, and since intoxication evidence was the only evidence adduced on the intent issue, the jury could not fail to understand that its duty was to determine if a degree of intoxication sufficient to negative specific intent existed and that if so negatived, it must acquit the defendants.

Appellants' remaining contention is that the court failed to charge that a reasonable doubt whether defendants' intoxication negatived specific intent requires an acquittal. We find no such failure. While the court did not formulate its instructions on this issue exactly as requested by defendants, the charge as a whole clearly sets forth these elements.

█ It is axiomatic that individual sentences should be considered in light of the entire charge. We conclude, as did this court in Schnautz v. United States, 263 F.2d 525 (5th Cir. 1959), that although "(t)he particular language on which the appellant(s) base * * * (their) assertion(s) of error may not be, standing alone, an accurate statement of the law, * * * considered in context and in the light of the entire charge * * the clause(s) complained of did not confuse the jury nor prejudice the appellant(s). * * * *"

Finally, appellants object to certain matters occurring during the trial which they contend were prejudicial. We doubt that there was any prejudice, but assuming there was, the Court's instructions to the jury at the time of the happening of such incidents were adequate to remove any prejudice.

Finding no error

We affirm.

RIVES and GODBOLD, Circuit Judges (specially concurring):

We concur in the careful and thorough opinion of Judge Hughes, except for one reservation which does not affect our agreement with the result. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), does not have retrospective application. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). The Fifth Circuit decision in *Wade* does not apply to trials occurring after the date thereof but before the Supreme Court opinion. Pearson v. United States, 389 F.2d 684 (5th Cir. 1968). Therefore, it seems to us that *Wade* has no application.