UNITED STATES of America,
Plaintiff-Appellee,

v.

Nelson BELL, Defendant-Appellant.

No. 79–5741.

United States Court of Appeals,
Fifth Circuit.
Unit B

March 23, 1981.

Rehearing En Banc Granted Sept. 4, 1981.

Roy W. Allman, Matthew J. Schaefer, Fort Lauderdale, Fla., for defendant-appellant.

Stephen B. Gillman, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before GODBOLD, Chief Judge, TJO-FLAT and VANCE, Circuit Judges.

TJOFLAT, Circuit Judge:

The appellant, Nelson Bell, was convicted under 18 U.S.C. § 2113(b) (1976), the federal "Bank Robbery" statute. He appeals his conviction, claiming that, as a matter of law, the evidence was inadequate to support the jury's finding that he took bank money and carried it away with the intent to steal or purloin. We reverse the conviction for insufficient evidence.

I

At the trial of Nelson Bell, the prosecution presented the following evidence. On October 13, 1978, Lawrence Rogovin, in Cincinnati, Ohio, wrote a check for $10,000 on his and his wife's Cincinnati bank account. He made the check payable to himself and his wife and endorsed it "Deposit only to the account of Lawrence and Elaine G. Rogovin at Dade Federal Savings & Loan, Account No. 02–1–1–159976–0." On October 13 or 14, Elaine Rogovin mailed the check to an agent in Dade County, Florida, who was to deposit it in the Rogovins' account at the Dade Federal Savings & Loan (Dade Federal). The agent never received the check.

On October 17, Nelson Bell opened an account at the Alapattah branch of Dade Federal. He used his own name, but a nonexistent home address and an incorrect date of birth and social security number.

Later the same day, he went to another branch of Dade Federal and deposited a check for $10,000 into his new account, giving a second false home address. The check was the same check the Rogovins had mailed except that the account number noted in the endorsement had been scratched out and the defendant's new account number had been written in its place.

Dade Federal accepted the deposit and put a twenty-day hold on the check. Exactly twenty-one days later, on November 7, Bell returned to the Alapattah branch and withdrew the total amount in the account, with interest, giving a third false home address. He insisted that the bank pay him in cash.

After the $10,000 check was discovered missing, FBI agents visited Nelson Bell at his place of work. Bell signed a written statement admitting that he had deposited the check and later withdrawn the money. He further stated that he received the check in the mail from someone in Cincinnati or Cleveland, Ohio, but that he did not have the letter and could not recall what it said or who sent it. In a subsequent interview, Bell stated that the $10,000 in cash had been stolen from his home in a burglary. A police officer who had investigated a burglary report at his home, however, testified that Bell had failed to report the theft of any money, and another officer testified that Bell specifically told him that no money had been taken and showed him several thousand dollars in a clutch bag.

A grand jury subsequently indicted Bell, charging him with violating 18 U.S.C. § 2113(b) (1976), the federal "Bank Robbery" statute. The jury found Bell guilty as charged. He appeals, alleging that the evidence was insufficient as a matter of law to sustain his conviction. Specifically, he contends that the government failed to prove that the $10,000 was withdrawn from the bank with the intent to steal or purloin.

## II

The Bank Robbery statute, 18 U.S.C. § 2113(b) (1976), provides as follows:

(b) Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association, shall be fined not more than $5,000 or imprisoned not more than ten years, or both . . . .

In *Thaggard v. United States*, 354 F.2d 735 (1965), *cert. denied*, 383 U.S. 958, 86 S.Ct. 1222, 16 L.Ed.2d 301 (1966), this court, relying on *United States v. Turley*, 352 U.S. 407, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957), interpreted the term "stolen," as used in section 2113(b), to include "all felonious takings . . . with intent to deprive the owner of the rights and benefits of ownership, regardless of whether or not the theft constitutes common-law larceny." *Thaggard*, 354 F.2d at 737 (quoting *Turley*, 352 U.S. at 417, 77 S.Ct. at 402). This is not the type of case that normally arises under this statute. *But see United States v. Guiffre*, 576 F.2d 126 (7th Cir.), *cert. denied*, 439 U.S. 833, 99 S.Ct. 113, 58 L.Ed.2d 128 (1978). While the facts may indicate that the defendant engaged in wrongdoing of some sort, the question we face is whether they indicate violation of section 2113(b).

There is little question that most of the necessary elements of the offense were met. The parties stipulated that Dade Federal was a federally insured savings and loan. Further, it appears clear that the amount in question exceeds $100 and either belonged to, or was in the care, custody, control, management, or possession of Dade Federal at the time defendant took and carried it away. The defendant contends, however, that the government failed to show that he took the money from Dade Federal with the specific intent to steal or purloin.

To begin, Bell contends that the evidence is insufficient to show that he took the check feloniously from its rightful owner, within the meaning of *Thaggard, supra.* While it is clear that he possessed the check under very suspicious circumstances, the government produced no specific evidence indicating how he got the check. If it cannot be proved that Bell stole the check, initially, it cannot be proved that he subse-

quently took the funds from the bank with the requisite intent to steal. We seriously question whether the evidence was sufficient on this point, but even assuming that it was, we find the evidence inadequate to prove that Bell had a specific intent to steal at the time he took and carried away the $10,000 from the bank.

In *Prince v. United States*, 230 F.2d 568, 571 (5th Cir. 1956), *reversed on other grounds*, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957), we specified that 18 U.S.C. § 2113(b) (1976) requires a showing of specific intent. One acts with specific intent when he "knowingly does an act which the law forbids or knowingly fails to do an act which the law requires to be done, intending with bad purpose either to disobey or to disregard the law .…" *Caples v. United States*, 391 F.2d 1018, 1022 (5th Cir. 1968). "To establish specific intent, the Government must prove beyond a reasonable doubt … that [the] defendant knowingly did an act which the law forbids purposely intending to violate the law." *United States v. Thaggard*, 477 F.2d 626, 631 (5th Cir.), *cert. denied*, 414 U.S. 1064, 94 S.Ct. 570, 38 L.Ed.2d 469 (1973).[1]

By definition, one cannot intend to steal or purloin his own property.[2] Accordingly, if one deposits money with a bank believing that it belongs to him, he has no intent to steal it from the bank when he subsequently takes it back. For example, a defendant may steal cash from a third party, deposit it with a bank, and later withdraw it. He does not withdraw it with the intent to steal from the bank because he has already stolen the money from the third party; the theft is complete. In withdrawing the cash, the defendant views it as his own, at least vis-a-vis the bank.

If the defendant steals a check from the third party, rather than cash, deposits the check, and later withdraws the amount of cash for which the check was written, the considerations are more complex. For instance, one could view this case as similar to that in the preceding paragraph—the theft is complete when the defendant takes the check, so that in defendant's subsequent dealings with the bank he views the money as his own. On the other hand, one might speculate that the defendant, in invoking the bank processes to convert the check to cash, has an ongoing or new intent to steal the cash the check represents. In the latter case, when does defendant view the crime as complete and thus cease to have the requisite specific intent? When defendant's bank accepts his deposit of the check? When the payor bank honors the check and forwards payment to defendant's bank? When the twenty-day holding period expires, indicating that the defendant now has free use of the amount deposited? In short, the jury in such a case must determine whether the defendant *intended to commit an illegal act by withdrawing the money from the bank*.[3]

---

1. *See United States v. Bailey*, 444 U.S. 394, 403–07, 100 S.Ct. 624, 631–2, 62 L.Ed.2d 575 (1980) (one acts with specific intent if he consciously desires an illegal result, however likely it is that his conduct will actually cause an illegal result). *See also United States v. Haldeman*, 559 F.2d 31, 114 n. 226 (D.C.Cir.1976), *cert. denied sub nom. Mitchell v. United States*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977); *United States v. Thornton*, 498 F.2d 749, 751 (D.C.Cir.1974); *United States v. Smaldone*, 484 F.2d 311, 321 (10th Cir. 1973), *cert. denied*, 415 U.S. 915, 94 S.Ct. 1411, 39 L.Ed.2d 469 (1974); *United States v. Porter*, 431 F.2d 7, 9 (9th Cir.), *cert. denied*, 400 U.S. 960, 91 S.Ct. 360, 27 L.Ed.2d 269 (1970); *United States v. Krosky*, 418 F.2d 65, 67 (6th Cir. 1969); *United States v. Williams*, 332 F.Supp. 1, 3–4 (D.Md. 1971).

2. *See Thaggard*, 354 F.2d at 737. *See also Black's Law Dictionary*, 1267 (5th ed. 1979) (stealing involves taking the property "of another").

3. *United States v. Grissom*, 645 F.2d 461 (5th Cir. 1981), follows parallel reasoning. In that case the defendant was a share-cropping farmer who had pledged his crop of soybeans to the Farmers' Home Administration (FHA) as security for an FHA loan. The FHA had notified area crop purchasers of its lien on the defendant's crops and had requested that any checks given to defendant for the purchase of his crops be made payable jointly to defendant and FHA. Defendant proceeded to sell crops under his father's name. Because the purchasers had not been told of a lien on the father's crops, the issued checks payable to the father only, rather than to the father and the FHA jointly. When defendant defaulted on his loan payments, the government brought charges under 18 U.S.C. § 658 (1976), which imposes a penalty upon anyone who, "with intent to defraud knowingly conceals, removes, disposes of, or converts to his own use or to that of another, any property mortgaged or pledged to … the Secretary of Agriculture acting through the Farmers' Home Administration."

In his defense, defendant submitted that he had not intended to defraud the FHA. His landlord charged as rent a percentage of the

In the case at hand, to prove Bell guilty of violating section 2113(b), the government had to prove that he intended to steal from the bank the $10,000 through the act of closing out his account with Dade Federal.[4] The only evidence the jury received concerning Bell's specific intent, however, was that he obtained the check under suspicious circumstances; he gave his proper name but a false social security number, date of birth, and address in his dealings with Dade Federal; he transacted his business at two different branches of Dade Federal; his deposit was subject to a twenty-day holding period, and he withdrew the $10,000, in cash, one day after that period expired. This evidence is all circumstantial. "[I]n criminal cases based on circumstantial evidence our task is to determine whether reasonable minds could conclude that the evidence is inconsistent with the hypothesis of the accused's innocence." *United States v. Warner*, 441 F.2d 821, 825 (5th Cir. 1971). *See United States v. Andrews*, 427 F.2d 539, 540 (5th Cir. 1970); *Surrett v. United States*, 421 F.2d 403, 405 (5th Cir. 1970). Here, even when the evidence is viewed in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), it cannot be said the reasonable minds would find it inconsistent with the hypothesis that the defendant lacked the requisite intent to steal or purloin from the bank in withdrawing the $10,000 from his checking account. The jury might have perceived that Bell viewed the theft as complete when he acquired the check and that he gave false information to the bank only to cover his tracks. It also could have inferred that Bell viewed the theft as complete when he deposited the check and had it credited to his account. In either event Bell would have lacked the requisite specific intent to steal or purloin from the bank when he removed the money from his checking account.[5] Accordingly, the conviction must be

## REVERSED.

VANCE, Circuit Judge, dissenting:

Through use of a stolen check with an altered endorsement, Bell succeeded in inducing a federally insured savings and loan

---

crops defendant sold, and defendant had sold the crops under his father's name in an attempt to deprive the landlord of his full rent. Defendant testified that he fully intended to repay his FHA loan. The trial court found an intent to defraud the landlord sufficient for conviction under section 658; a more specific intent to defraud the government need not be shown.

On appeal, the Fifth Circuit reversed the trial court and required that an intent to defraud the FHA be shown before defendant could be convicted:

It would be unfair and illogical to subject [defendant] to punishment of up to five years in jail for committing a federal felony offense, if, in fact, he intended to commit only a state misdemeanor—punishable by a maximum of six months in jail—merely because the crops used to commit the state misdemeanor happened to be mortgaged to the FHA.... [I]t violates common sense to allow the government to punish [defendant] in this case, absent a finding that [he] both defrauded and intended to defraud the government.

*Grissom*, at 467–68.

4. In his dissent, Judge Vance relies upon *United States v. Guiffre*, 576 F.2d 126 (7th Cir.), *cert. denied*, 439 U.S. 833, 99 S.Ct. 113, 58 L.Ed.2d 128 (1978), in which the Seventh Circuit affirmed the conviction under section 2113(b) of a defendant who deposited stolen, forged checks and later withdrew the money. As Judge Vance acknowledges, however, the Seventh Circuit did not consider the question of specific intent, and there is no indication that the question was raised. Accordingly, we find that case inapposite.

5. In this case the jury needed a framework in which to evaluate Bell's acts and the alternative views he may have held about their ramifications. This framework might have been provided through expert testimony or other evidence and instructions concerning the technicalities of the banking process, debtor-creditor rights, and the law of negotiable instruments. Such matters are foreign to the typical juror and criminal, but yet they may be very useful in exploring and evaluating the question of subjective intent. *See United States v. Garber*, 607 F.2d 92 (5th Cir. 1979) (en banc).

Of course, evidence that a defendant's withdrawal injured the bank—for instance, evidence that under state law the bank was liable to the payor of the check for the amount that the defendant withdrew—would not, in itself, be sufficient evidence of specific intent to steal from the bank. Unlike the law of "general intent," which holds simply that one "intends" the "natural consequences of his acts," *Windisch v. United States*, 295 F.2d 531, 532 (5th Cir. 1961), specific intent involves a subjective element. The defendant must actually intend the illegal result. *See Caples*, 391 F.2d at 1022.

association to part with possession of ten thousand dollars that did not belong to him. This court in *Thaggard v. United States,* 354 F.2d 735 (5th Cir. 1965), *cert. denied,* 383 U.S. 958, 86 S.Ct. 1222, 16 L.Ed.2d 301 (1966), upheld a conviction under 18 U.S.C. § 2113(b) of a defendant who withdrew money that he knew his bank had mistakenly credited to his account. I am of the opinion that *Thaggard* is controlling. In *Thaggard,* we expressly rejected the view of the fourth circuit in *United States v. Rogers,* 289 F.2d 433, 437 (4th Cir. 1961), and held that section 2113(b) is not to be so narrowly construed that its applicability is limited only to larceny as that crime was known to the common law. The second and seventh circuits also have adopted this view. *United States v. Fistel,* 460 F.2d 157, 162 (2d Cir. 1972); *United States v. Guiffre,* 576 F.2d 126 (7th Cir.), *cert. denied,* 439 U.S. 833, 99 S.Ct. 113, 58 L.Ed.2d 128 (1978). These decisions rely on the Supreme Court's interpretation of the word "stolen" in *United States v. Turley,* 352 U.S. 407, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957) as a basis for broadly interpreting section 2113(b) to apply to felonious takings with intent to deprive the owner of rights and benefits of ownership. In *Guiffre* the seventh circuit upheld the conviction under section 2113(b) of a defendant who deposited stolen checks with forged endorsements into three separate accounts and later withdrew the money. Although the court did not discuss the requisite intent required for a conviction when a defendant deposits a stolen check with an alteration and later withdraws the money, it affirmed the conviction of a defendant charged by the indictment with "taking and carrying away with the intent to steal." The court did not require testimony concerning the law of negotiable instruments.

The evidence here provided sufficient basis for the jury's conclusion that Bell violated section 2113(b). To my mind Bell's actions in establishing an account with a non-existent home address and incorrect date of birth and social security number provide ample evidence of specific intent. Appellate review of the sufficiency of the evidence to support appellant's conviction requires that the evidence be viewed in the light most favorable to the government. *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Black,* 497 F.2d 1039 (5th Cir. 1974). This court has ruled that "[a]ll rea-sonable inferences and credibility choices as will support the jury's verdict of guilty must be made." *Id.* at 1401. When measured against this standard, the evidence before us requires that Bell's conviction be affirmed.

## ON REHEARING AND REHEARING EN BANC

Before GODBOLD, Chief Judge, RONEY, TJOFLAT, HILL, FAY, VANCE, KRAVITCH, FRANK M. JOHNSON, Jr., HENDERSON, HATCHETT, ANDERSON and THOMAS A. CLARK, Circuit Judges.

BY THE COURT:

A member of this Administrative Unit of the Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in this Administrative Unit in active service having voted in favor of granting a rehearing en banc,

IT IS ORDERED that the cause shall be reheard by this Administrative Unit of the Court en banc *with oral* argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of supplemental briefs.