**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Nelson BELL, Defendant-Appellant.**

**No. 79–5741.**

United States Court of Appeals, Fifth Circuit.*
Unit B

June 1, 1982.

Roy W. Allman, Matthew J. Schaefer, Marvin Schulman, Fort Lauderdale, Fla., for defendant-appellant.

Linda Collins Hertz, Stephen B. Gillman, Asst. U. S. Attys., Miami, Fla., Ann T. Wallace, Atty., Appellate Section, U. S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Before GODBOLD, Chief Judge, RONEY, TJOFLAT, HILL, FAY, VANCE, KRAVITCH, FRANK M. JOHNSON, Jr., HENDERSON, HATCHETT, ANDERSON and THOMAS A. CLARK, Circuit Judges.

VANCE, Circuit Judge:

Nelson Bell was convicted under 18 U.S.C. § 2113(b) and sentenced to imprisonment for one year. He appealed, contending that the evidence was insufficient to support the jury finding that he took or carried away money from a savings and loan association with the intent to steal or purloin. A divided panel of this court reversed. *United States v. Bell*, 649 F.2d 281 (5th Cir. 1981). Sitting en banc we now affirm Bell's conviction.

On October 13, 1978 Lawrence and Elaine Rogovin mailed a $10,000 check from Cincinnati, Ohio to their investment agent in Miami, Florida. The check was made payable to the Rogovins, and had the following limited endorsement on the back: "Deposit only to the account of Lawrence and Elaine G. Rogovin at Dade Federal Savings & Loan, Account No. 02–1–159976–0." The agent never received the check.

On October 17 Nelson Bell opened an account at a branch of Dade Federal and was assigned account number 03–1–081526–6. He used his own name, but gave a false address, birth date and social security number. Later that day he deposited the Rogovins' check to account number 03–1–081526–6 at another branch of Dade Federal. The evidence does not show how Bell, who was unknown to the Rogovins, obtained the check. It does show, however, that he was not authorized to deposit or cash the Rogovins' check. At the time of deposit the original account number in the endorsement

had been scratched out and Bell's new account number had been added. Dade Federal inexplicably accepted the obviously altered check, guaranteed the endorsement and processed it for payment. After a twenty day holding period the check had cleared. The amount of the deposited check, which had been credited to Bell's account, then became available for withdrawal. On the twenty-first day, before the Rogovins discovered the loss of the check, Bell withdrew the $10,000 in cash and closed the account.

Bell was convicted under the federal bank robbery statute, 18 U.S.C. § 2113(b), which provides:

> Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association, shall be fined not more than $5,000 or imprisoned not more than ten years, or both . . . .

Bell contends that the taking of the $10,000 was not within the statute because it did not constitute common law larceny, a specific intent crime requiring a trespassory taking. The question whether a nontrespassory taking is within the federal statute was treated at some length in *Thaggard v. United States*, 354 F.2d 735 (5th Cir. 1965), *cert. denied*, 383 U.S. 958, 86 S.Ct. 1222, 16 L.Ed.2d 301 (1966). We reaffirm this court's conclusion in *Thaggard* that the term "steal," as used in 18 U.S.C. § 2113(b), embraces "all felonious takings . . . with intent to deprive the owner of the rights and benefits of ownership, regardless of whether or not the theft constitutes common-law larceny." *Id.* at 737 (quoting *United States v. Turley*, 352 U.S. 407, 417, 77 S.Ct. 397, 402, 1 L.Ed.2d 430 (1957)).[1] Bell's conduct, which involved taking by means of deceit or false pretenses, can

---

1. *See United States v. Ferraro*, 414 F.2d 802, 804 (5th Cir. 1969); *Williams v. United States*, 402 F.2d 258, 259 (5th Cir. 1968). The second, seventh and eighth circuits have similarly relied on *United States v. Turley*, 352 U.S. 407, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957), in deciding that a narrow construction of section 2113(b) is not

warranted. *See United States v. Guiffre*, 576 F.2d 126, 127–28 (7th Cir.), *cert. denied*, 439 U.S. 833, 99 S.Ct. 113, 58 L.Ed.2d 128 (1978); *United States v. Johnson*, 575 F.2d 678, 679–80 (8th Cir. 1978); *United States v. Fistel*, 460 F.2d 157, 162–63 (2d Cir. 1972); *cf. United States v. Maloney*, 607 F.2d 222, 229–30 & n.12

therefore be reached by the federal bank robbery statute.

Bell also argues that the evidence is insufficient to support his conviction unless it excludes every reasonable hypothesis of innocence, on the theory that if there is such a reasonable hypothesis the jury must necessarily have had a reasonable doubt of his guilt. Specifically, he alleges that since the jury could reasonably have found that he believed that his crime was completed before he withdrew the $10,000, the jury must have had a reasonable doubt of his specific intent to steal from Dade Federal. He additionally contends that the proof was insufficient to establish that he altered the endorsement on the Rogovins' check.[2]

 We hold that the appellant has incorrectly stated the standard of review for sufficiency of the evidence. It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt.[3] A jury is free to choose among reasonable constructions of the evidence. Viewing the evidence presented in this case and the inferences that may be drawn from it in the light most favorable to the government, *see, e.g., Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), we conclude that it was sufficient to allow a reasonable jury to find that Bell altered the endorsement on the check, deposited it to his account, and thereby was enabled to take and did take $10,000 with intent to steal from the care, custody, control, management or possession of Dade Federal.

AFFIRMED.

---

(9th Cir. 1979) (crimes under 18 U.S.C. § 1153 not limited to common law larceny), *cert. denied*, 445 U.S. 918, 100 S.Ct. 1280, 63 L.Ed.2d 603 (1980); *United States v. Bryan*, 483 F.2d 88, 91 & n.1 (3d Cir. 1973) (crimes under 18 U.S.C. § 659 not limited to common law larceny). *But see United States v. Feroni*, 655 F.2d 707, 709–11 (6th Cir. 1981); *United States v. Pinto*, 646 F.2d 833, 836–37 (3d Cir.), *cert. denied*, —— U.S. ——, 102 S.Ct. 94, 70 L.Ed.2d 85 (1981); *LeMasters v. United States*, 378 F.2d 262, 263–68 (9th Cir. 1967); *United States v. Rogers*, 289 F.2d 433, 437–38 (4th Cir. 1961).

2. Appellant does not dispute that he took and carried away over $100 that belonged to or was in the care, custody, control, management or possession of Dade Federal, which the parties stipulated to be a federally insured savings and loan association.

3. The fifth circuit at one time took the position that the government had a heavier burden of proof when relying on circumstantial evidence of a crime than when relying on direct evidence. Under that view, the district court was required to grant an acquittal unless the circumstantial evidence was "inconsistent with every reasonable hypothesis of innocence." *E.g., Kassin v. United States*, 87 F.2d 183, 184 (5th Cir. 1937). In 1954 the Supreme Court stated that circumstantial evidence was not intrinsically different from testimonial evidence, and described the every reasonable hypothesis jury instruction as "confusing and incorrect." *Holland v. United States*, 348 U.S. 121, 139–40, 75 S.Ct. 127, 137–38, 99 L.Ed. 150 (1954). Despite the Supreme Court's criticism the fifth circuit did not abandon the hypothesis of innocence language, but attempted to reconcile it with *Holland* by rephrasing the test. *See United States v. Squella-Avendano*, 478 F.2d 433, 437 (5th Cir. 1973); *United States v. Warner*, 441 F.2d 821, 825 (5th Cir.), *cert. denied*, 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58 (1971); *Riggs v. United States*, 280 F.2d 949, 954–55 (5th Cir. 1960); *Cuthbert v. United States*, 278 F.2d 220, 224–25 (5th Cir. 1960). All of the other circuits have abandoned the hypothesis of innocence phraseology. *See United States v. Davis*, 562 F.2d 681, 689 & n.10 (D.C.Cir.1977); *United States v. Gabriner*, 571 F.2d 48, 50 (1st Cir. 1978); *United States v. Elsbery*, 602 F.2d 1054, 1057 (2d Cir.), *cert. denied*, 444 U.S. 994, 100 S.Ct. 529, 62 L.Ed.2d 425 (1979); *United States v. Fiore*, 467 F.2d 86, 88 (2d Cir. 1972), *cert. denied*, 410 U.S. 984, 93 S.Ct. 1510, 36 L.Ed.2d 181 (1973); *United States v. Hamilton*, 457 F.2d 95, 98 (3d Cir. 1972); *United States v. Chappell*, 353 F.2d 83, 84 (4th Cir. 1965); *United States v. Conti*, 339 F.2d 10, 12–13 (6th Cir. 1964); *United States v. Wigoda*, 521 F.2d 1221, 1225 (7th Cir. 1975), *cert. denied*, 424 U.S. 949, 96 S.Ct. 1421, 47 L.Ed.2d 355 (1976); *United States v. Carlson*, 547 F.2d 1346, 1360 (8th Cir. 1976), *cert. denied*, 431 U.S. 914, 97 S.Ct. 2174, 53 L.Ed.2d 224 (1977); *United States v. Nelson*, 419 F.2d 1237, 1242–45 & nn. 18 & 19 (9th Cir. 1969); *United States v. Merrick*, 464 F.2d 1087, 1092 (10th Cir.), *cert. denied*, 409 U.S. 1023, 93 S.Ct. 462, 34 L.Ed.2d 314 (1972). We conclude that the difference is not merely semantic, and specifically adopt, as the more precise statement of the law, the test as set out in the text above.

R. LANIER ANDERSON, III, Circuit Judge, joined by RONEY, Circuit Judge, specially concurring:

I concur in the opinion, and I write separately only to state my understanding that Judge Vance's opinion does not change the substantive law of this circuit with respect to the standard of review for sufficiency of the evidence. To say that the evidence is sufficient if "a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt," *supra* at 549, is not substantively different from saying that the evidence is sufficient if a reasonable trier of fact could find that the "evidence was inconsistent with every reasonable hypothesis of innocence." *United States v. Marx*, 635 F.2d 436, 438 (5th Cir. 1981). It is true that "[i]t is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt," *supra* at 549, but it is equally true that if a hypothesis of innocence is sufficiently reasonable and sufficiently strong, then a reasonable trier of fact *must* necessarily entertain a reasonable doubt about guilt.

TJOFLAT, Circuit Judge, joined by GODBOLD, Chief Judge, HATCHETT and THOMAS A. CLARK, Circuit Judges, dissenting:

There is little question that Nelson Bell engaged in some form of criminal activity:

Bell wrongfully obtained $10,000 that belonged to another. The issue, however, is not whether Bell committed a crime, but whether his conduct was proscribed by the federal bank robbery statute, 18 U.S.C. § 2113(b) (1976). Because I believe that it was not, I respectfully dissent.

The majority asserts that Bell's presentation of the altered check to Dade Federal for credit to his account and his subsequent withdrawal of the funds represented by that check amounted to the crime of fraud by false pretenses and that this activity violated section 2113(b). Assuming, *arguendo*, that Bell committed fraud by false pretenses,[1] I take issue with the majority over whether the federal bank robbery statute should be interpreted to proscribe that crime.

That statute provides:

Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association, shall be fined not more than $5,000 or imprisoned not more than ten years, or both . . . .

18 U.S.C. § 2113(b) (1976).

There can be no doubt that this provision is ambiguous. "[T]hroughout our jurisprudence, the courts have considered that 'ambiguity concerning the ambit of criminal

---

[1]. Although the majority finds, and my analysis assumes, sufficient evidence that Bell committed fraud by false pretenses against Dade Federal, I have serious doubts whether this is actually the case. The elements of common law false pretenses are a false representation of fact, scienter, intent to induce action in reliance on the misrepresentation, justifiable reliance by the party fraudulently induced, and *loss* to that party resulting from such reliance. *Prosser, Law of Torts*, § 105 at 685–86 (4th ed. 1972); *see generally Torcia, Wharton's Criminal Law*, §§ 422–452 (14th ed. 1980). There is no evidence in this case that Dade Federal suffered any loss as a result of Bell's activities. The evidence showed that Bell presented the altered check to Dade Federal for deposit to his account. Dade Federal did not immediately credit Bell's account; instead it waited until the check had been paid by the drawee bank in

Cincinnati. According to the evidence then, when Bell withdrew the $10,000 from his Dade Federal account he in essence withdrew funds that had been provided Dade Federal by the Cincinnati bank. There was no proof that Dade Federal was ever called upon by the Cincinnati bank to absorb that bank's loss, or that of the drawer, and the trial judge's instructions did not speak to that issue. Therefore, we have a case in which the government failed to prove that the alleged victim of fraud by false pretenses, Dade Federal, suffered any loss.

The government's proof established nothing more than that Dade Federal was a conduit through which Bell was enabled to appropriate the funds of another. Therefore, even if § 2113(b) could be read to prohibit fraud by false pretenses, the evidence presented in this case was insufficient to convict Bell.

statutes should be resolved in favor of lenity.' " *United States v. McClain*, 545 F.2d 988, 995 (5th Cir. 1977), *quoting Rewis v. United States*, 401 U.S. 808, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971). "The rule that penal laws are to be construed strictly, is, perhaps, not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals." *United States v. Boston and Maine R.R.*, 380 U.S. 157, 160, 85 S.Ct. 868, 870, 13 L.Ed.2d 728 (1965), *quoting United States v. Wiltberger*, 5 Wheat. (18 U.S.) 76, 5 L.Ed. 37 (1820). "Of course, the doctrine of strict construction is not absolute. '[T]he intention of the law-maker must govern in the construction of penal ... statutes.' " *McClain*, 545 F.2d at 996 (citations omitted).

Applying these principles, the Court of Appeals for the Ninth Circuit analyzed the legislative history of section 2113(b), and not only concluded that a narrow construction of that provision was appropriate, but also specifically held the crime of false pretenses beyond the statute's reach. *LeMasters v. United States*, 378 F.2d 262, 267–68 (9th Cir. 1967). I can do no better than recite the Ninth Circuit's painstaking parsing of congressional intent:

> The 1937 enactment of 18 U.S.Code § 2113(b) had a background and legislative history wholly different from those of the 1919 stolen motor vehicle act. *We are aware of no background of evil at which Congress was pointing the statute except the evil of interstate operation of gangster bank robbers. As we have seen, the Senate in 1934 passed a bill clearly and expressly creating several federal crimes against banks, including the crime of obtaining by false pretense. The House, and the Congress, rejected the bill, enacting only the robbery provisions.* In 1937, without any further discussion of evil to be cured, Congress enacted § 2113 clearly covering robbery and burglary, and including § 2113(b), the provision containing the ambiguous words "steal" and "purloin." In construing the words we are obliged by the Turley case to give them a "meaning consistent with the context in which [they] appear." *We think that that context, in the light of legislative history, requires that they be construed as not covering the obtaining of money by false pretenses.* The words are used in conjunction with the words "takes and carries away," and these are the classic words used to define larceny. The words do not have a necessary common law meaning; rather, they are ambiguous. They are used in a statute, the purpose of which, as stated in its title, is " * * * to include larceny." In such a case, the title is "a useful aid in resolving ambiguilty [sic]. ..."

> In the bank situation we see no reason, urgent or otherwise, why Congress in 1937 should have wanted to enter the field of obtaining by false pretenses, duplicating state law which was adequate and effectively enforced, and the duplication of which would bring innumerable cases, most of them small, within the jurisdiction of federal prosecutors and courts. *Congress was as aware in 1937 as it was in 1934, when it rejected the unambiguous provision making obtaining by false pretense from a bank of [sic] federal crime, that such an extension of federal law would serve no purpose except to confuse and dilute state responsibility for local crimes which were being adequately dealt with by state law.* None of the reasons which persuaded the circuits and finally the Supreme Court to interpret broadly the word stolen in the motor vehicle act were present in 1937, when Congress wrote § 2113, or are present today.

> *If the oft cited canon of statutory construction that ambiguities in penal statutes are to be resolved in favor of the accused has any vitality, this is a plain case for its application.*

*Id.* (citations omitted) (emphasis supplied). *See Jerome v. United States*, 318 U.S. 101, 105–6, 63 S.Ct. 483, 486, 87 L.Ed. 640 (1943); *United States v. Feroni*, 655 F.2d 707, 710–711 (6th Cir. 1981).

I find this analysis of congressional intent very persuasive. The resolution of the ambiguity which section 2113(b) manifests is significantly aided by the legislative history

which shows that Congress expressly considered, but rejected, the inclusion of fraud by false pretenses within the statute's purview.[2] I am also cognizant of the precept of strict construction of criminal statutes and of the Supreme Court's directive that federal courts "must generally assume, in the absence of a plain indication to the contrary, that Congress when it enacts a statute is not making the application of the federal act dependent on state law." *Jerome v. United States*, 318 U.S. at 104, 63 S.Ct. at 485 (interpreting earlier version of federal bank robbery statute). Given all of this, I would hold that section 2113(b) does not encompass conduct which amounts only to fraud by false pretenses. *Accord, United States v. Feroni*, 655 F.2d 707 (6th Cir. 1981); *United States v. Pinto*, 646 F.2d 833 (3d Cir.), *cert. denied*, 454 U.S. 816, 102 S.Ct. 94, 70 L.Ed.2d 85 (1981); *LeMasters v. United States*, 378 F.2d 262 (9th Cir. 1967).

I disagree with the majority that *Thaggard v. United States*, 354 F.2d 735 (5th Cir. 1965), *cert. denied*, 383 U.S. 958, 86 S.Ct. 1222, 16 L.Ed.2d 301 (1966), controls this case. In *Thaggard*, the defendant drew money from his bank account when he knew that the bank had mistakenly overcredited that account. Thus, the common law equivalent of Thaggard's activity was more in the nature of *conversion*, rather than false pretenses. Moreover, the bank in *Thaggard*, unlike Dade Federal in this case, suffered a tangible loss. See note 1, *supra*. Finally, the majority's reading of *Thaggard* as holding that section 2113(b) embraces "all felonious takings" is erroneous: that language in *Thaggard* is plainly dicta, not at all necessary to the result. The majority's use of *Thaggard* to extend section 2113(b)'s reach to include fraud by false pretenses is, therefore, misguided, especial-

ly in light of the legislative history and rules of construction I have discussed.

I have no quarrel with the majority's adoption of a test for sufficiency of the evidence which inquires whether "a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." Majority opinion at p. 549. The application of this test does not change my analysis of this case or the conclusions I have reached, however, for even if there were overwhelming evidence that Bell subjected Dade Federal to the crime of fraud by false pretenses, I would nevertheless hold that a section 2113(b) prosecution could not lie.

I respectfully dissent.

---

**2.** Notably, none of the decisions which "broadly constru[e] § 2113(b) [see majority opinion, note 1, *supra*] examines the legislative history of that enactment. Each of those decisions is nothing more than a mechanical application of [*United States v. Turley*, 352 U.S. 407, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957)]. They provide no discussion of why the context of § 2113(b) suggests that a broad interpretation of its provisions is appropriate." *United States v. Feroni*,

655 F.2d 707, 710 (6th Cir. 1981). Conversely, the courts that have adopted a narrower construction of § 2113(b) have relied extensively on the statute's legislative history. *See Feroni*, *supra*; *United States v. Pinto*, 646 F.2d 833 (3d Cir.), *cert. denied*, 454 U.S. 816, 102 S.Ct. 94, 70 L.Ed.2d 85 (1981); *LeMasters v. United States*, 378 F.2d 262 (9th Cir. 1967); *United States v. Rogers*, 289 F.2d 433, 437–38 (4th Cir. 1961).