**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Idelfonso GARCIA–PENA, Jose M. Prieto, Defendants-Appellants.**

**No. 83–5125.**

United States Court of Appeals,
Eleventh Circuit.

Aug. 20, 1984.

Jorge A. Sibila, Miami, Fla. (court-appointed), for Prieto.

Stanley Marcus, U.S. Atty., Robert Lipman, Linda Collins-Hertz, Helen J. Forsyth, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Theodore J. Sakowitz, Federal Public Defender, Stewart Abrams, Asst. Federal Public Defender, Miami, Fla., for Garcia-Pena.

Before RONEY and HILL, Circuit Judges, and TUTTLE, Senior Circuit Judge.

RONEY, Circuit Judge:

Idelfonso Garcia-Pena and Jose M. Prieto appeal their firearms convictions on the ground that they were "merely present" at the crime and the evidence was insufficient to prove they intended to enter a conspiracy. Holding the evidence showed that the defendants' continued association over a period of days with those actively engaged in open criminal activity was more than mere presence and was sufficient to infer an intent to participate in the conspiracy, we affirm.

Several defendants were convicted of conspiracy to transfer, possession, and unlawful transfer of firearms in violation of the Gun Control Act, 26 U.S.C.A. §§ 5812, 5861(d)–(e) and 5871. *See* 18 U.S.C.A. § 371; 18 U.S.C.A. § 2. Garcia-Pena was also convicted of unlawful possession of a firearm during commission of a felony, 18 U.S.C.A. § 924(c)(2). We affirmed Robert Guillermo's and Rafael Gutierrez's convictions without oral argument under 11th Circuit Rule 25, but scheduled Garcia-Pena and Prieto for oral argument. We heard oral argument on behalf of Garcia-Pena, but not Prieto, whose counsel was unable to attend the scheduled hearing. After a complete review of the record, however,

and a study of the briefs, we conclude that further oral argument would not be helpful in deciding the issues presented.

■ The evidence is considered in the light most favorable to the Government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). The standard of review is whether a "reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Bell,* 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc) (footnote omitted). "To uphold the convictions on the conspiracy counts, we must be satisfied that the government proved beyond a reasonable doubt that these appellants had 'deliberate, knowing, specific intent to join the conspiracy.'" *United States v. DeSimone,* 660 F.2d 532, 537 (5th Cir. Unit B 1981), *cert. denied,* 455 U.S. 1027, 102 S.Ct. 1732, 72 L.Ed.2d 149 (1982) (citing *United States v. Morado,* 454 F.2d 167, 175 (5th Cir.), *cert. denied,* 406 U.S. 917, 92 S.Ct. 1767, 32 L.Ed.2d 116 (1972)).

■ Although "mere presence at the scene of the crime is not enough to sustain a conspiracy conviction," 660 F.2d at 537; *see United States v. Reyes,* 595 F.2d 275, 280 (5th Cir.1979), the Government's evidence here placed both defendants in more than just a suspect climate of activity, and showed more than presence or mere association with those engaged in criminal activity. A detailed review of the evidence demonstrates the correctness of the Government's position on this point.

Undercover agents determined that the Kobra Gun Shop was dealing illegally in the sale of firearms. On September 29, 1982, Agent Valadez was waiting at the Kobra Gun Shop for delivery of guns and silencers. Gonzalez, the operator of the Gun Shop, told Agent Valadez that the silencers had not arrived yet. The men went outside the shop. A white Honda appeared occupied by Guillermo, Gutierrez, and *Garcia-Pena.* Gonzalez approached the Honda and talked with the men and, then, went inside the shop accompanied by them. Gonzales came back out of the shop and told Agent Valadez that the silencers had arrived, and, thereafter, delivery was made to Valadez. During this negotiation, Agent Valadez arranged for the future delivery of 100 silencers on October 4, 1982. Surveillance continued, now including observation of the white Honda, and revealed the following. On October 5, 1982, Guillermo, Gutierrez, and *Garcia-Pena* drove the Honda to the Mora More Machine Shop. The machine shop is about the size of a double garage and has a small attached office. All three men, as well as *Prieto* and Morajon, the operator of the machine shop, were observed going in and out of the shop during the morning. Morajon was observed throwing machine filings over the back fence.

While being observed, Gutierrez placed a white package containing silencers on the front seat of a light blue Buick. Morajon and *Prieto* placed a brown sealed cardboard box containing silencers on the back seat of a brown Ford. *Prieto* left in the Ford. *Garcia-Pena,* Gutierrez and Guillermo followed in the Buick. They proceeded in convoy by circuitous route to a shopping center, where *Prieto* left his car and entered an auto parts shop. While inside the shop, the brown cardboard box was transferred to the Buick. *Prieto* returned, then, to the machine shop in the Ford. Gutierrez, *Garcia-Pena* and Guillermo proceeded in the Buick to the Kobra Gun Shop. Guillermo carried the brown cardboard box into the shop and met with Gonzalez and Cuero, the operators of the shop. Gutierrez and *Garcia-Pena* parked across the street from the shop and waited. Undercover agent Valadez went into the shop to "take delivery" of 100 silencers promised by Gonzalez. When Guillermo left the shop, Gonzalez told Valadez that Guillermo was the connection for the silencers. Gonzalez and Cuero were arrested in the gun shop. Gutierrez and *Garcia-Pena* were arrested shortly thereafter outside the shop. When arrested, *Garcia-Pena* possessed a loaded .38 calibre revolver. Two silencers and assorted parts for making silencers were found in the Buick. Guillermo was arrested in a nearby restaurant. Morajon was arrested at his machine shop, where numerous cylinders and other pieces of silencers were found in open view. *Prieto* was ar-

rested when he returned to the shop. Additional evidence showed Gutierrez, Guillermo and *Garcia-Pena* gave officers the same residence address. *Garcia-Pena's* gun had been shipped four weeks earlier to the Kobra Gun Shop.

Thus, Garcia-Pena and Prieto were observed over a period of time to be associated with those actively and openly involved in the manufacture, delivery and sale of firearms. Particularly incriminating were the facts concerning Prieto's leading of the convoy to the shopping center, defendants entering and leaving the machine shop where open and active manufacture of the silencers was conducted, Garcia-Pena's providing the same residence address as Gutierrez and Guillermo, and Garcia-Pena's illegal possession of a gun that had been delivered originally to the Kobra Gun Shop.

 When read in the light most favorable to the Government, the evidence was substantial enough to support the jury's verdict that the defendants deliberately, knowingly and specifically intended to join the conspiracy. There was no abuse of discretion by the trial court in not granting defendants' motion to sever and no error in admitting expert testimony on the quality of the silencers.

AFFIRMED.

Tjoflat, Circuit Judge, filed specially concurring opinion.