**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

---

No. 95-40519

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

RENE RIVAS,

Defendant-Appellant.

---

Appeals from the United States District Court
For the Southern District of Texas

October 23, 1996

Before WISDOM, SMITH and PARKER, Circuit Judges.

PARKER, Circuit Judge:

Appellant Rene Rivas ("Rivas") appeals his convictions for conspiracy to possess with intent to distribute marijuana and possession with intent to distribute marijuana, as well as the sentences imposed by the district court. Finding no reversible error, we affirm.

FACTS AND PROCEEDINGS

Law enforcement officers stopped an 18-wheeler hauling a load of watermelons from Texas to Florida on September 27, 1994. They

1

found approximately 773 pounds of marijuana in a hidden compartment in the trailer.  The driver, Rivas's co-defendant Ramon Rodriguez, pleaded guilty to a drug trafficking charge.

Juan Cano ("Cano"), who owned the truck, had been cooperating with law enforcement for about three weeks at the time of the stop and testified as a key witness against Rivas.  Cano testified that on August 13, 1994 he received a mysterious phone call from an unidentified man that he later determined was Rivas.  The caller stated that he was holding Cano's son Ruben and instructed Cano to deliver his pickup truck to a certain parking lot the next day. There were four or five more phone calls in which the same caller demanded a car and a large red tractor trailer rig ("the red truck").  After Cano complied with these demands, Ruben was released.  In addition to the vehicle demands, the caller and his messenger who picked up the vehicles repeatedly asked Cano whether he was ready to do business or "ready to haul weed."

On September 7, 1994, Cano reported these incidents to the police and agreed to cooperate in an investigation into the demands and into the stolen vehicles.  The caller contacted Cano again on September 21, 1994 and Cano agree to haul marijuana for him.  The caller instructed Cano to locate a load of produce going to Florida, and to turn over another one of his tractor trailer rigs ("the pink truck"), in exchange for the return of the red truck. Cano reported this call to the police, who set up surveillance beginning with the turn-over of the pink truck and continuing through Rivas's arrest.  Rivas met Cano at an agreed location and

2

took the pink truck from him. Cano testified that this was the first time he had ever seen Rivas, but that he recognized his voice from the phone calls. Cano then arranged for the pink truck to take a load of watermelons to Florida. Rivas provided the driver, Ramon Rodriguez, and Cano provided $200 for fuel money.

The Texas Department of Public Safety ("DPS") officers who conducted the surveillance testified that Rivas picked up the pink truck and drove it to his house, where they observed one of the other vehicles Cano had reported stolen. Rivas then drove the pink truck to another house, where the red truck was parked. From September 23-27, surveillance officers observed Rivas meeting with Rodriguez at various parking lots, driving the red truck, inspecting the pink truck, and meeting the pink truck at the produce market where it picked up the watermelons.

On September 27, 1994, after the load of marijuana had been confiscated, the police executed a search warrant at Rivas's house, recovering a box of watermelons, $9,400 in currency and two vehicles that Cano had reported stolen. Rivas was not arrested at this time.

On September 29, 1994, after three aborted meetings in parking lots, Rivas came to Cano's house and wrote on a piece of paper, "Mr. Cano, if you take all the rap, I will pay you one percent, whatever it cost, what happened." A federal warrant for Rivas's arrest was issued on September 30, 1994 and executed on October 3, 1994.

Rivas was indicted for conspiracy to possess with intent to

3

distribute marijuana and possession with intent to distribute marijuana for his role. A jury found him guilty on both counts. The district court sentenced him to 78 months in prison.

THE DISTRICT COURT'S "CEASE DELIBERATING" INSTRUCTION

During deliberations at trial, the jury twice informed the judge that they had reached a verdict on one count, but that they were having trouble reaching a verdict on the other. The second time, they inquired, "Are we allowed to have a hung decision on a count?" The court responded:

> If you have reached a verdict as to any count, please have the foreperson make the appropriate entries on the verdict forms as to that count. Then have the foreperson sign the verdict form, date it, and enclose and seal it in the attached envelope.
> As to any count for which you have not reached a verdict, please advise if further deliberations will assist you in reaching a verdict.

Rivas objected on the basis that any further deliberation on the undecided count would in effect force a coerced verdict. The jury filled out the jury form and sealed it, in compliance with the court's instructions. The district court then gave the jury an *Allen*[1] charge, adding, "You are no longer to address the count for which you have received a unanimous verdict." After giving the *Allen* charge, the court gave the jury an identical verdict form and stated again that it was "to apply only to the count [on] which you have not reached a verdict."

After the jury returned to deliberations, Rivas made the additional objection that the court's instruction improperly

---

[1] *Allen v. United States*, 164 U.S. 492, 17 S. Ct. 154, 41 L. Ed. 528 (1896).

4

prevented the jurors from deliberating further on the count upon which they had agreed. The district court overruled the objection. After a question from the jury about the definition of "possession" and in response to the court's instruction, Rivas reurged his previous objections and moved for judgment of acquittal "on the basis that the jury has already returned one verdict; consequently, any further deliberations constitute double jeopardy on the remaining count." The district court denied the motion.

After further deliberations, the jury returned both verdict forms, finding Rivas guilty on both counts. A poll of the jury confirmed that the guilty verdicts were unanimous.

Rivas contends that the district court erred because its instructions (1) coerced the jury into surrendering its views for the purpose of rendering its verdict; (2) set a time limit for the deliberations; (3) constituted a comment on the evidence; and (4) resulted in a directed verdict. Rivas argues that the procedure prevented further deliberation on a count when the jury had not yet reached a final verdict. Rivas relies on *United States v. Straach*, 987 F.2d 232 (5th Cir. 1993), where this Court stated that

> a jury has not reached a valid verdict until deliberations are over, the result is announced in open court, and no dissent by a juror is registered. Even at this point, where the verdict is announced in open court and no dissent is voiced, the verdict may not be accepted by the court if a poll *taken before the verdict is recorded* indicates a lack of unanimity. . . . This applies particularly where more than one count has been submitted to the jury, for continuing deliberations may shake views expressed on counts previously considered. Jurors are not bound by votes in the jury room and remain free to register dissent even after the verdict has been announced, though before the verdict is recorded.

5

*Id.* at 243, *quoting United States v. Taylor*, 507 F.2d 166, 168 (5th Cir. 1975).

The Government points out that Rivas failed to object to the district court's instructions on the basis now presented as error until after the instruction had been sent to the jury and they had begun to deliberate. Objections made to instructions after they have been given to the jury and the jury has retired to deliberate are reviewed for plain error. *United States v. Winn*, 948 F.2d 145, 159 (5th Cir. 1991), *cert. denied*, 503 U.S. 976, 112 S. Ct. 1599, 118 L. Ed. 2d 313 (1992). *See* FED. R. CRIM. P. 30.

In order to establish that the instruction constituted plain error, Rivas must show that (1) there was error; (2) the error was clear or obvious; and (3) the obvious error affected substantial rights. *United States v. Calverley,* 37 F.3d 160, 162-63 (5th Cir 1994) *cert. denied*, 115 S. Ct. 1266, 131 L. Ed. 2d 145 (1995). We find that the district court erred and that the error was clear. However, the error did not affect Rivas's substantial rights. There is no indication that the jury was less than unanimous in its verdict on Count One at any time. The jurors were polled after both verdicts were returned and all jurors indicated that the verdict on Count One was their verdict. We therefore decline to reverse on the basis of the district court's erroneous "cease deliberating" instruction. Our affirmance should not be read to approve the procedure used by the district court. However, we are unpersuaded that the procedure prejudiced Rivas, given the specific circumstances of this case.

Rivas also contends that the "cease deliberating" instruction constituted a directed verdict on Count One and resulted in a double jeopardy violation. He argues that by ending jury deliberations on Count One, the district court in effect directed a verdict on that count. He argues that jeopardy therefore attached and further deliberations on the remaining count were prohibited by the double jeopardy clause. Because the district court did not accept in open court a final verdict on Count One until after the jury had finished deliberating on Count Two, Rivas's double jeopardy claim is without merit.

SUFFICIENCY OF THE EVIDENCE

When reviewing a challenge to the sufficiency of the evidence in a criminal case, this Court must determine whether a "reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc), *aff'd on other grounds*, 462 U.S. 356, 103 S. Ct. 2398, 76 L. Ed. 2d 638 (1983).

Rivas argues that key testimony provided by Juan Cano should not be believed because it was implausible and because a government witness who was involved in the investigation characterized Cano's version of the facts as a "wild and far-fetched" story. Rivas points out that Ruban Cano, the alleged kidnap victim, did not mention the incident in his own probation revocation hearing. He also emphasizes that both Ruban and Juan Cano had previous convictions for drug-related violations while Rivas had no previous criminal history.

7

The jury was entitled to credit Cano's testimony, regardless of Rivas's position that it was implausible. Rivas has failed to show that a reasonable trier of fact could not have found that the evidence established guilt beyond a reasonable doubt. *See Bell*, 678 F.2d at 549.

*ALLEN* CHARGE

Rivas contends that the district court erred by giving the jury an *Allen* charge when the jury had only deliberated for a short time, in effect coercing a jury verdict. The instruction given by the district court mirrors the one which this court approved in *United States v. Nguyen*, 28 F.3d 477, 484 (5th Cir. 1994), and Rivas does not challenge the actual content of the charge.

The jury had deliberated from 11 a.m. until 5:00 p.m. with a break for lunch on the first day, then two more hours the following day. The jury had twice informed the court it was deadlocked before the *Allen* charge was given. After the court gave the charge, the jury sent two more notes concerning the instructions and deliberated until 4:50 p.m.

The district court has broad discretion to give an *Allen* charge when the jury indicates that it is deadlocked. *United States v. Pace*, 10 F.3d 1106, 1125 (5th Cir. 1993), *cert. denied*, 114 S. Ct. 2180, 128 L. Ed. 2d 899 (1994). Rivas has not shown that the district court abused its discretion in giving the *Allen* charge under these circumstances.

MOTION TO SUPPRESS EVIDENCE

Rivas contends that the district court erred when it denied

8

his motions to suppress evidence seized in the search of his house and its premises. This Court reviews factual findings in the district court's order denying a motion to suppress for clear error and resolves questions of law *de novo*. *United States v. Kelley*, 981 F.2d 1464, 1467 (5th Cir.), *cert. denied*, 508 U.S. 944, 113 S. Ct. 2427, 124 L. Ed. 2d 647 (1993).

Rivas filed motions to suppress the evidence found during a search of his home, arguing that the state search warrant authorizing the search of the premises was invalid and that he did not validly consent to the warrantless search of his home. Rivas challenges the district court's denial of those motions.

a. Search of the interior of the house.

Danny Pena, a DPS trooper, testified at the suppression hearing that he went to Rivas's house with other officers, driving up to the house with his emergency lights on at about 10:20 p.m. on September 27, 1994. Pena saw someone look out the window and then run back into the house. Pena and another officer went to the front door and knocked. Rivas's wife opened the door. Pena, who was in uniform, identified himself as a police officer and asked Mrs. Rivas for permission to enter the house. According to the officer, she agreed. Pena informed Mrs. Rivas that they were there to retrieve some vehicles and that they had a search warrant.

Joe Ortiz, another DPS officer, testified that he was sent to Rivas's house to execute a search warrant and that he participated in the search. When he arrived, he went to the back of the house and saw Rivas leaving through the back door. Ortiz met Rivas,

9

identified himself as a DPS officer and Rivas, in turn, identified himself. Another officer walked up and stated that he had detected the odor of marijuana at the house and on Rivas. Rivas admitted that he had been smoking a joint. The officers then requested permission to search the house. Rivas was given a "Consent to Search" form, and Ortiz testified that Rivas stated that "they" were already searching his house. Ortiz informed Rivas that no one was searching his house, but that the officers were only explaining to his wife that they were going to be on the property, seizing certain vehicles that had been reported stolen. Ortiz testified that Rivas said that he understood and signed the consent form.

Officer Segundo testified that Rivas added the words, "After officers already in house" and "reluctantly" to the consent form when he signed it. Segundo asked Rivas whether that "mean[t] we can go in, or does it mean that we can't." According to Segundo, Rivas responded that they could search the house.

Rivas testified that: (1) he did not read the Consent to Search form and that the officers insisted that he sign it; (2) he understood what the officers were saying to him and he knew he was signing a Consent to Search form; (3) no one told him that he did not have to sign the form, but no one threatened him; and (4) he finished the eleventh grade in school. Mrs. Rivas testified that officers knocked on the front door of the house and she answered the knock. She said that the officers pushed their way into the house without an invitation and she never consented to a search of the house.

The voluntariness of consent is a question of fact to be determined from the totality of all the circumstances. *Kelley*, 981 F.2d at 1469. This Court has set forth a six-factor test for reviewing the voluntariness of a consent to search: (1) the defendant's custodial status; (2) the presence or absence of coercive police tactics; (3) the nature and extent of the defendant's cooperation with officers; (4) the defendant's knowledge of his ability to decline to give consent; (5) the defendant's intelligence and educational background; and (6) the defendant's belief that no incriminating evidence will be found. *Kelley*, 981 F.2d at 1470. First Rivas was not in custody when they requested his consent. Second, the only evidence of police coercion is Rivas's uncorroborated testimony that the officers insisted that he sign the form and the fact that the police arrived after 10:00 p.m. Third, there is no evidence that Rivas was uncooperative with the officers. Fourth, the form clearly stated that Rivas could refuse to give his consent, although Rivas asserted that he did not read the form before signing it. The fact that he added "reluctantly," to the form and then told Segundo that they could go ahead with the search evidenced his awareness that he had the right to refuse to consent to the search. Fifth, his eleventh grade education and the notations he made on the consent form indicate an intelligence level sufficient to made a knowing waiver. Finally, Rivas did not believe that the officers would find any contraband in the house except a small amount of marijuana. Although the late hour of the search weighs as a

11

coercive factor, the district court's finding of voluntariness was not clearly erroneous given the balance of the evidence in the record.

b. Search of the exterior of Rivas's house.

The officers found two vehicles that Cano told the officers Rivas had extorted from him and a box of watermelons. Rivas contends that the search warrant issued by a Texas justice of the peace is invalid under FED. R. CRIM. P. 41(a) because: (1) a justice of the peace is not a "court of record" under the rule; (2) the warrant does not authorize the search in the nighttime; and (3) the affidavit attached to the warrant did not establish probable cause.

In *United States v. McKeever*, 905 F.2d 829, 832 (5th Cir. 1990), *cert. denied*, 498 U.S. 1070, 111 S. Ct. 790, 112 L. Ed. 2d 852 (1991), this Court held that "the 1972 amendment to Rule 41 reflects a Congressional intent that none of Rule 41's requirements apply to state warrants." Rule 41(a) applies only to warrants sought by federal officers. *See id*. The warrant in this case was obtained by state DPS officers from a state justice of the peace. Thus, Rivas's arguments under Rule 41 are meritless.

Rivas next contends that the warrant was invalid because Texas Code of Criminal Procedure, Article 18.01(c) does not list justices of the peace as judicial officers empowered to issue search warrants under Article 18.02. The Government responds that this Court has held that the Texas Code of Criminal Procedure provides that justices of the peace are "magistrates" who are authorized to issue search warrants. *United States v. Conine,* 33 F.3d 467, 469

12

(5th Cir. 1994); TEX.CODE CRIM.PROC.ANN. art. 2.09 (Vernon Supp.1994).

Rivas's assertion that the affidavit attached to the state warrant did not establish probable cause is unsupported by any argument. Because issues that are raised on appeal but not briefed are deemed abandoned, this Court will not address this alleged point of error. *See United States v. Gipson*, 46 F.3d 472, 474-75 (5th Cir. 1995).

The district court's factual determination that Rivas gave valid consent for the search of his home was not clearly erroneous. Further, Rivas did not establish that the warrant executed on the outside premises was invalid. We therefore conclude that the district court did not err in denying Rivas's motions to suppress the evidence found during the search.

SENTENCE ENHANCEMENT FOR MANAGERIAL ROLE

The district court's finding that a defendant played a managerial role in the offense is a factual finding that this Court reviews for clear error. *United States v. Narvaez*, 38 F.3d 162, 166 (5th Cir. 1994), *cert. denied,* 115 S. Ct. 1803, 131 L. Ed. 2d 729 (1995).

Pursuant to U.S.S.G. § 3B1.1(c): "If the defendant was an organizer, leader, manager or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels." Subsections (a) and (b) discuss three and four-level enhancements for more aggravating roles. In this case, the evidence showed that Rivas obtained the vehicle used to transport the marijuana to Florida by extorting the vehicle from Juan Cano. Rivas attempted

13

to recruit Cano into the conspiracy and succeeded in persuading Cano to locate a load of produce bound for Florida to facilitate the crime. Rivas has not shown that the district court's decision to enhance Rivas's offense level by the minimum amount provided for in § 3B1.1 was clearly erroneous.

CONCLUSION

For the foregoing reasons, we affirm Rivas's convictions and sentence.

AFFIRMED.