**UNITED STATES of America**

v.

**Sleiman Tayseer SALEEM, Rashid Taysir Rashid Salim**

**No. CRIM.3:02–CV–222–H.**

United States District Court,
N.D. Texas,
Dallas Division.

Dec. 5, 2002.

Carlos R. Cardona, Federal Public Defender Northern District of Texas, Dallas, TX, for Defendant.

Nathan Franklin Garrett, US Attorney's Office Department of Justice, Dallas, TX, for U.S.

## MEMORANDUM OPINION AND ORDER

SANDERS, Senior District Judge.

Before the Court are Defendant Sleiman Saleem's Motion to Suppress and Defendant Rashid Salim's Motion to Suppress, both filed August 19, 2002, and the Government's Consolidated Response to Defendant Sleiman Saleem's Pretrial Motions and the Government's Consolidated Response to Defendant Rashid Salim's Pretrial Motions, both filed August 26, 2002. Also before the Court are the transcript of the hearing held November 25 and 26, 2002 pursuant to *Jackson v. Denno,* 378 U.S. 368, 380, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), Defendant Sleiman Saleem's Proposed Findings of Fact and Conclusions of Law, Defendant Rashid Salim's Proposed Findings of Fact and Conclusions of Law, and the Government's Proposed Findings of Fact and Conclusions of Law, all filed December 2, 2002.[1]

## I. Preliminary Matters

In the cases of both Defendant Sleiman and Defendant Rashid, the government

1. To distinguish between the co-defendants, who are also brothers, the Court will hereinafter utilize the name "Sleiman" to refer to Defendant Sleiman Tayseer Saleem. Likewise, the Court will utilize the name "Rashid" to refer to Defendant Rashid Taysir Rashid Salim.

utilized a procedure colloquially known as a "knock and talk." The Court notes that such a procedure has been recognized as constitutionally allowable by other courts. *United States v. Jones*, 239 F.3d 716, 720 (5th Cir.2001) *cert. denied* 534 U.S. 861, 122 S.Ct. 142, 151 L.Ed.2d 94 (2001). At the *Jackson–Denno* hearing of November 25–26, 2002 there was widely variant testimony regarding the time of morning at which government agents arrived at Defendant Rashid's home. None of the witnesses proffered by the government could state with certainty the time of the "knock and talk." The most credible piece of testimony on this subject seems to be that it was still dark, or nearly dark at the time of the "knock and talk." (Steen at 92).[2] For purposes of this ruling, the Court takes judicial notice of the fact that on July 3, 2002 sunrise in Dallas, Texas was at 6:23 a.m.

This case does not involve, nor is it related to terrorism or terrorist activity. Both Defendants are charged with visa fraud, and neither are suspected of any terrorism connection. (*See* Landis at 66).

## II. Defendant Sleiman Saleem

### A. *Suppression of the Passport and Visa*

#### 1. *Findings of Fact*

● On July 3, 2002 a group of agents from the INS, Department of State and FBI, as well as uniformed police officers arrived at the residence of Defendant Sleiman sometime between 6:20 and 7:00 a.m. (Chabot at 7; Higbie at 32).

● Upon arrival at the residence, Defendant Sleiman allowed the government agents to enter the home. (Chabot at 8). An INS agent asked Defendant

Sleiman for his passport (Chabot at 9). Defendant did not have his passport, but told the agent that he could retrieve it from a relative's house. (Chabot at 9, Higbie at 35). The INS agent asked him to bring the documents to the State Department at a fixed time that afternoon. (Chabot at 11).

● The Defendant then completed a Consent to Search form (Defendant's Exhibit 3) and the agents conducted a search of the dwelling. They did not remove anything from the dwelling as a result of that search. (Higbie at 36).

● Defendant Sleiman retrieved his passport and presented it at the designated time. (Chabot at 12; 37–8).

#### 2. *Statement of Law*

● The Fourth Amendment protects against unreasonable searches and seizures. Generally a search must be made based on probable cause and executed pursuant to a warrant. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). A warrantless entry into a person's home is presumptively unreasonable. *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). The burden of proof is on the Government to show that a warrantless search and seizure is constitutional under the Fourth Amendment. *United States v. Shugart*, 117 F.3d 838, 842 n. 2 (5th Cir.1997). The Government must prove the constitutionality of any search and seizure by the preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 177, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974).

● Consent is a well-established exception to the requirements of a warrant and

---

2. References to the record in this case will be identified by the last name of the witness followed by a referenced page number.

There is no need to specify the volume of the testimony, because no witnesses testified on both November 25 and November 26.

probable cause. That consent must be given voluntarily. Voluntariness is a question of fact to be determined from the totality of the circumstances. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The Fifth Circuit has set out a six factor test to be applied in determining voluntariness of consent. *See United States v. Rivas,* 99 F.3d 170, 176 (5th Cir.1996). Those factors are:

1. Defendant's custodial status
2. Presence or absence of coercive police tactics
3. Nature and extent of defendant's cooperation with officers
4. Defendant's knowledge of his ability to decline to give consent
5. Defendant's intelligence and educational background
6. Defendant's belief that no incriminating evidence will be found.

• Although these 6 factors are highly relevant, no one of the factors is dispositive or controlling of the voluntariness issue. *Id.*

### 3. Conclusion

• The Court finds that the government did not obtain Defendant Sleiman's passport and other immigration documents in the search of his residence. Instead, the Defendant presented the documents to the government completely apart from the search of his residence.

• Even were the Court to apply the 5th Circuit factors to this case, it is clear that Defendant Sleiman voluntarily consented to the search of his apartment as well as to the presentation of his passport at the Department of State.

• Defendant Sleiman's motion to suppress his passport and immigration documents obtained by the Government July 3, 2002 is DENIED.

### B. Suppression of the Oral and Written Statements given July 3 and July 8, 2002

#### 1. Findings of Fact

■ • On July 3rd, when Defendant Sleiman produced his passport at the Department of State office, he was also questioned. (Higbie at 38). Before he was questioned, he was notified of his *Miranda* rights. (Higbie at 38). Those rights were further explained to him by Agent Higbie of the Department of State. (Higbie at 39). Defendant Sleiman signed a form that indicated he was both notified of his *Miranda* rights and that he waived them. (Higbie at 41).

• At that interview, and after being Mirandized, Defendant Sleiman provided the government with a written statement. (Higbie at 43.) (Government's Exhibit 5). The statement is in the Defendant's handwriting. (Higbie at 45).

• On July 8, while in INS custody, Defendant Sleiman provided another statement. (Higbie at 47). At the interview of July 8, Defendant Sleiman was also Mirandized, and signed a written form indicating that he waived his rights. (Higbie at 48, Shafik at 77–78). That form was in Arabic. (Shafik at 77–78) (Government's Ex. 5–B). He was also provided with an Arabic translator who both administered the *Miranda* warning, and translated throughout the interview. (Shafik at 77–79).

#### 2. Statement of Law

• The Fifth Amendment privilege against self-incrimination provides that "[n]o person...shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V.

• The Supreme Court in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) created a procedural mechanism to protect an individual's right against self-incrimination.

• *Miranda* only applies when the Defendant is "in custody." For a statement to be admissible under *Miranda,* a *Miranda* warning must have been given, and there must be a valid waiver of rights.

• In determining whether a person is in custody, the Court should examine all the circumstances surrounding the interrogation, but must ultimately ask whether there was a "formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest. *United States v. Chavez,* 281 F.3d 479, 486 (5th Cir.2002); *Stansbury v. California,* 511 U.S. 318, 322, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994).

• A waiver of *Miranda* rights is valid if the government proves by a preponderance of the evidence that the accused voluntarily, knowingly, and intelligently waived his *Miranda* rights. *Miranda v. Arizona,* 384 U.S. 436, 475, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

• To prove a valid waiver, the government must show that:

1. The relinquishment of the right was "voluntary in the sense that it was the product of a free and deliberate choice;" and

2. The waiver must be made with "full awareness of the right being abandoned and the consequences of doing so." *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986).

### 3. Conclusion

**July 3, 2002**

• The Court finds that Defendant Sleiman was not in custody, as that term is defined for *Miranda* purposes, at the time he made his statement on July 3, 2002. He voluntarily appeared at the Department of State, and the Court finds that he was free to leave.

• Even were the Court to hold that Defendant Sleiman was in custody on July 3 when he wrote his statement, the Court finds that he was properly Mirandized and that he knowingly, voluntarily, and intelligently waived those rights.

• Defendant Sleiman's Motion to Suppress his oral and written statements of July 3, 2002 is **DENIED.**

**July 8, 2002**

• The Court finds that Defendant Sleiman was in INS custody at the time of his July 8, 2002 statement. The Court further finds that Defendant Sleiman was properly Mirandized in both English and Arabic, and that Defendant Sleiman knowingly, voluntarily, and intelligently waived his rights.

• Defendant Sleiman's Motion to Suppress his oral and written statements of July 8, 2002 is **DENIED.**

## III. Defendant Rashid Salim

### A. Suppression of the Passport and Visa

#### 1. Findings of Fact

██ • On July 3, 2002 at sometime between 5:00 a.m. and 6:30 a.m., approximately 8 law enforcement officers consisting of Special Agents with the Bureau of Diplomatic Security, the FBI, INS, and 2 uniformed police officers arrived at Defendant Rashid's apartment. (Landis at 43; Steen at 94). All of the officers were armed, some with handguns visibly worn on their leg, others with the weapons at their side. (Landis at 48). There

were no female officers in the group. Present in the one-bedroom apartment were Defendant Rashid, his wife and 3 small children.

● There is conflicting testimony on whether Defendant Rashid consented to the officers entering his home. (Alabaddi at 128; Steen at 72).

● As part of a "protective sweep" of the apartment, officers entered the bedroom of the apartment. (Landis at 44–45). Despite the absence of female officers, Defendant Rashid's wife was not allowed to dress or use the restroom in privacy. (Alabaddi at 115).

● Officers searched the apartment. There is argument regarding whether the Defendant Rashid and his wife gave verbal consent for the search. No written consent to search was provided. This is in sharp contrast with the written consent to search form provided to Defendant Sleiman as part of the same investigation on the same morning. (Defendant's Exhibit 3). The officers also searched the bedroom of the apartment, where Defendant Rashid's small children were sleeping. There is conflicting testimony on whether the children were still in beds while those beds were searched. (Alabaddi at 116, Landis at 45).

● The search of the apartment was quite thorough, including taking pillows out of couches, going through the clothes, and searching under the beds. (Landis at 65). Furthermore, Defendant Rashid and his wife were also personally searched. (Landis at 65).

● There is also conflicting testimony regarding whether the passports and immigration documents obtained by the government that morning were provided by Defendant Rashid's wife, or were found in the search of the apartment (Alabbadi at 117, Steen at 73).

● Both Defendant Rashid and his wife have a limited understanding of English. (Alabaddi at 120, Elquotib at 105). There was no translator present at the home on the morning of July 3, 2002.

### 2. Statement of Law

● The Fourth Amendment protects against unreasonable searches and seizures. Generally a search must be made based on probable cause and executed pursuant to a warrant. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). A warrantless entry into a person's home is presumptively unreasonable. *Payton v. New York,* 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). The burden of proof is on the Government to show that a warrantless search and seizure is constitutional under the Fourth Amendment. *United States v. Shugart,* 117 F.3d 838, 842 n. 2 (5th Cir.1997). The Government must prove the constitutionality of any search and seizure by the preponderance of the evidence. *United States v. Matlock,* 415 U.S. 164, 177, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974).

● Consent is a well-established exception to the requirements of a warrant and probable cause. That consent must be given voluntarily. Voluntariness is a question of fact to be determined from the totality of the circumstances. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The Fifth Circuit has set out a six factor test to be applied in determining voluntariness of consent. *United States v. Rivas,* 99 F.3d 170, 176 (5th Cir.1996). Those factors are:

1. Defendant's custodial status
2. Presence or absence of coercive police tactics
3. Nature and extent of defendant's cooperation with officers

4. Defendant's knowledge of his ability to decline to give consent

5. Defendant's intelligence and educational background

6. Defendant's belief that no incriminating evidence will be found.

● Although these 6 factors are highly relevant, no one of the factors is dispositive or controlling of the voluntariness issue. *Id.*

### 3. Conclusion

● The Court finds that Defendant Rashid did not consent to the entry and search of his residence on July 3, 2002. The Government bears the burden of proof by a preponderance of the evidence that Defendant Rashid voluntarily admitted the officers into his apartment and voluntarily consented to the search. The government did not meet that burden in this case.

● The Court finds that the totality of the circumstances in this case indicates that Defendant Rashid did not voluntarily consent to the search of his apartment. Furthermore, if Defendant Rashid's wife did present the government officers with the passports and visas at issue in this suppression motion, the Court finds that the presentation was not voluntary due to the intimidating and coercive environment created by the government.

● Applying the 5th Circuit's six-factor test to this situation:

1. The Court finds that the Defendant Rashid was in custody at the time the 8 law enforcement officers arrived at his door very early on the morning of July 3, 2002. He was not free to leave, and in fact was taken into INS detention shortly thereafter.

2. The Court further finds that the arrival of approximately 8 visibly armed law enforcement officers between 5:00 and 6:30 a.m. who proceeded to enter and perform a "security sweep" of the one-bedroom apartment in the manner described in the Findings of Fact, while Defendant Rashid's wife and three small children slept in the next room created a highly intimidating and coercive environment.

3. Finally, the Court finds that Defendant Rashid and his wife's limited ability to understand English decreases the likelihood that Defendant Rashid voluntarily consented to a search of his apartment, or that he or his wife voluntarily consented to present their passport and visa.

● Defendant Rashid's Motion to Suppress the passport and immigration documents obtained by the Government on July 3, 2002 is **GRANTED.**

### B. Suppression of the Oral and Written Statements given on July 3, 2002

#### 1. Findings of Fact

██ ● On the morning of July 3, 2002, Defendant Rashid and his wife were given a *Miranda* warning while at their residence. (Landis at 15). The warning was given verbally and in English. (Landis at 15). Defendant Rashid provided oral statements while at his residence. (Landis at 17).

● Shortly thereafter, Defendant Rashid was handcuffed at his apartment and taken into INS administrative custody. (Landis at 49). He was questioned by agents of the Department of State and the INS at the INS local headquarters. (Landis at 19). At INS headquarters, he was given his *Miranda* rights again in written form, still in English. (Government's Ex. 4–a). Those rights were read to him and he signed the *Miranda* waiver. He did not read the rights him-

self, and there is testimony that he cannot read in English. (Steen at 102).

• Defendant Rashid then provided an oral statement which Agent Landis of the Department of State wrote down because Defendant Rashid "expressed that he could not write English well enough." (Landis at 27). The agents then read the statement back to him and he signed it. He did not read the statement at any time. (Landis at 51).

• Defendant Rashid was not provided with an Arabic translator, or with a written *Miranda* warning and waiver in Arabic. All communications with him related to his rights and the content of his statement were in English. This is in contrast with the interrogation of Defendant Sleiman on July 8, 2002 in which there was both a translator and a written *Miranda* waiver in Arabic.

### 2. Statement of Law

• The Fifth Amendment privilege against self-incrimination provides that "[n]o person...shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V.

• The Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) created a procedural mechanism to protect an individual's right against self-incrimination.

• *Miranda* only applies when the Defendant is "in custody." For a statement to be admissible under *Miranda*, a *Miranda* warning must have been given, and there must be a valid waiver of rights.

• In determining whether a person is in custody, the Court should examine all the circumstances surrounding the interrogation, but must ultimately ask whether there was a "formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest. *United States v. Chavez*, 281 F.3d 479, 486 (5th Cir.2002); *Stansbury v. California*, 511 U.S. 318, 322, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994).

• A waiver of *Miranda* rights is valid if the government proves by a preponderance of the evidence that the accused voluntarily, knowingly, and intelligently waived his *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436, 475, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

• To prove a valid waiver, the government must show that:

1. The relinquishment of the right was "voluntary in the sense that it was the product of a free and deliberate choice;" and

2. The waiver must be made with "full awareness of the right being abandoned and the consequences of doing so." *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986).

### 3. Conclusion

• The Court finds that Defendant Rashid was in custody on July 3, 2002 at the time he provided the oral statements at his apartment. The intimidating and coercive nature of the government agents' presence there created a custodial situation.

• The Court further finds that Defendant Rashid was in custody on July 3, 2002 at the time he provided the oral statements at INS headquarters. He was placed in handcuffs and driven there. It is clear that he was not free to leave at any time.

• The Court finds that the government has not met its burden of showing by a preponderance of the evidence that Rashid voluntarily, knowingly, and intelligently waived his rights. The government has not shown that he understood his rights nor that he understood the consequences of waiver. The absence of an Arabic translator or Arabic written statement of rights when it was clear

that Defendant Rashid might not be able to read in English, and clearly was not comfortable writing in English, when paired with the fact that Defendant Sleiman was provided with both a translator and an Arabic language written *Miranda* warning weigh in favor of the Court's finding that Defendant Rashid's statements were not proper under *Miranda.*

• Defendant Rashid's Motion to Suppress his oral and written statements of July 3, 2002 is **GRANTED.**

## IV. Conclusion

Defendant Sleiman's Motion to Suppress is **DENIED** in its entirety. Defendant Rashid's Motion to Suppress is **GRANTED.**

**THE CLERK IS DIRECTED TO IMMEDIATELY FAX THIS ORDER TO COUNSEL.**

SO ORDERED.