United States Court of Appeals
Fifth Circuit

**F I L E D**

August 13, 2007

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT

No. 06-31002
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TOMMY FLETCHER,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Louisiana
(2:05-CR-49-4)

Before DAVIS, BARKSDALE and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Tommy Fletcher challenges his conspiracy conviction, claiming: there is insufficient evidence to sustain the verdict; the Government engaged in prosecutorial misconduct; and the district court erred in both giving a modified *Allen* charge and denying his new-trial motion.

In June 2005, Fletcher, with ten others, was charged in connection with a string of robberies which targeted various Louisiana railyards. Among other things, the superseding

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

indictment charged: in November 2002, Fletcher, along with his co-conspirators, burglarized the BNSF Railyard; Fletcher assisted by procuring materials for the robbery and removing electronic merchandise from railcars and loading them into one of his co-conspirator's vehicles; in December 2002, Fletcher and his co-conspirators set fire to a telephone junction box at the Southern Scrap Yard in order to disable its alarm system; and he, along with his co-conspirators, removed the safe, which contained approximately $40,000.

In March 2006, Fletcher was found guilty of conspiracy, under 18 U.S.C. § 371, to: commit larceny of goods traveling in interstate commerce; taking away goods by theft and fraud from an interstate carrier; and arson of property used in interstate commerce. (At the time of Fletcher's trial, all ten of his co-conspirators had been convicted of, or pleaded guilty to, one or more crimes charged in the superseding indictment.) In a detailed order, the district court denied Fletcher's motion for a new trial that July. That September, he was sentenced, *inter alia*, to 15 months imprisonment.

Fletcher first contends the evidence was insufficient to convict him of the charged conspiracy. In sufficiency-of-the-evidence challenges, we review the evidence in the light most favorable to the jury verdict. *United States v. Cluck*, 143 F.3d 174, 180 (5th Cir. 1998). "All credibility determinations and

2

reasonable inferences will be resolved in favor of the verdict, and the evidence will be found sufficient unless it was not such as could lead a rational fact-finder to conclude that the essential elements of the crime had been proved beyond a reasonable doubt." *Id.*

To sustain a conspiracy conviction, the Government must establish that: "(1) two or more persons conspired to pursue an unlawful objective; (2) the defendant knew of the unlawful objective and voluntarily agreed to join the conspiracy with the intent to further the objective; and (3) one or more members of the conspiracy committed an overt act in furtherance of the objective of the conspiracy". *United States v. Dadi*, 235 F.3d 945, 950 (5th Cir. 2000). While "mere association" is insufficient to prove participation, "an agreement may be inferred from concert of action, voluntary participation may be inferred from a collocation of circumstances, and knowledge may be inferred from surrounding circumstances". *United States v. Bieganowski*, 313 F.3d 264, 277 (5th Cir. 2002) (internal citations and quotation marks omitted). While the Government must show the defendant knew and intended to join the conspiracy, "it need not show that each defendant knew all the details of the conspiracy". *United States v. Schmick*, 904 F.2d 936, 941 (5th Cir. 1990).

Fletcher contends there is no evidence he entered into any agreement to burglarize BNSF Railyard; he points to the testimony

3

of two of his co-conspirators that he showed up as the robbery was taking place. In this regard, Fletcher notes, he was acquitted of the substantive offenses of larceny and robbery of the BNSF Railyard; and he maintains there was no evidence he agreed with his co-conspirators beforehand to burglarize the railyard. Finally, in challenging the Southern Scrap Yard burglary, Fletcher contends: that testimony shows he arrived after his co-conspirators had already entered the building; therefore, he could not have been responsible for setting fire to the telephone junction box as the Government claimed.

Concerning the BNSF Railyard robbery, a co-conspirator testified: he told Fletcher what they planned to do at the railyard; and Fletcher assisted in obtaining rope to facilitate the robbery and worked with his co-conspirators in removing the televisions, VCRs, and other electronic merchandise from the railcars and loading that merchandise in one of the co-conspirator's house. For the evidence regarding Fletcher's involvement in the Southern Scrap Yard burglary, a co-conspirator testified Fletcher entered in the building in order to help the others remove the safe and helped transport it to one of the co-conspirator's home, where it was opened. Finally, a reasonable juror could conclude Fletcher was involved in the arson. *E.g.,* **United States v. Ayala**, 887 F.2d 62, 67 (5th Cir. 1989) (holding that jurors may rely their common sense and evaluate facts in the

light of their common knowledge of the natural tendencies of human beings).  Viewing the evidence in the light most favorable to the verdict, a rational jury could have concluded Fletcher "knew about the conspiracy and voluntarily agreed to join".  *United States v. Krenning*, 93 F.3d 1257, 1265 (5th Cir. 1996).

Fletcher also contends the Government failed to prove all necessary elements for the conspiracy-to-commit-arson claim because they did not show the destroyed telephone junction box was being used in interstate commerce, as required under 18 U.S.C. § 844(I). The Government satisfied that element, however, by showing BellSouth Corporation's use of the telephone junction box to engage in interstate communication and commerce.

For his prosecutorial-misconduct claim, Fletcher contends that, during closing argument, the Government made improper comments by expressing an opinion as to Fletcher's guilt; specifically, the jury was told that the other co-conspirators had already pleaded guilty and that the Government would not have prosecuted Fletcher if he were not guilty.  Fletcher asserts: because the Government's case was solely based upon the testimony of two co-conspirators, the Government's actions were an improper attempt to bolster the credibility of those witnesses.

"Criminal convictions are not to be lightly overturned on the basis of a prosecutor's comments standing alone." *United States v. Pineda-Ortuno*, 952 F.2d 98, 106 (5th Cir. 1992).  A court must

5

evaluate the statement's prejudicial effect, whether any cautionary instruction was given, and the strength of the evidence of the defendant's guilt. *United States v. Gallardo-Trapero*, 185 F.3d 307, 320 (5th Cir. 1999). "The ultimate question before us, however, is not the impropriety of the prosecutor's remarks but whether these remarks were so inflammatory that they entitle the defendant to a new trial. A prosecutor's remarks to the jury constitutes reversible error only when they are both inappropriate and harmful." *United States v. Lowenberg*, 853 F.2d 295, 301 (5th Cir. 1988) (internal citations and quotation marks omitted).

The district court gave instructions to mitigate the prejudicial effect of the Government's remarks, cautioning the jury that statements by counsel are not evidence. Furthermore, even assuming the remarks were improper, they were not "so pronounced and persistent that [they] permeate[d] the entire atmosphere of the trial". *United States v. Martino*, 648 F.2d 367, 388 n. 10 (5th Cir. 1981) (internal citations and quotation marks omitted). There was sufficient evidence of Fletcher's guilt that, notwithstanding the statements, he would still have been convicted.

Fletcher contends the district court erred by giving a modified *Allen* charge to the jury only four and a half hours after it began deliberation. The jury had informed the court it was unable to come to a unanimous decision; and, after the modified *Allen* charge, they returned a verdict approximately six hours

6

later.  Fletcher asserts the modified charge coerced the jurors into finding him guilty even after they stated further deliberations would not help.

Giving a modified *Allen* charge is reviewed for abuse of discretion.  ***United States v. Rivas***, 99 F.3d 170, 175 (5th Cir. 1996).  A court has broad discretion to determine whether an *Allen* charge will coerce the jury into returning a verdict it would otherwise not reach.  ***United States v. Gordon****,* 780 F.2d 1165, 1177 (5th Cir. 1986).

Fletcher did *not* object to the language of the charge but only to its being given early in deliberations.  Despite his contentions, however, he has produced no evidence that the charge had a coercive effect.  *E.g.,* ***United States v. Allard***, 464 F.3d 529, 536 (5th Cir. 2006).  Consequently, and due to the broad discretion we give district courts in this matter, his contention fails.

Finally, Fletcher contends the district court erred in denying his new-trial motion.  "A district court's decision to grant or deny a motion for a new trial pursuant to Rule 33 is reviewed for an abuse of discretion."  ***United States v. Wall***, 389 F.3d 457, 465 (5th Cir.  2004).  Fletcher raised two grounds for relief in his new-trial motion:  insufficient evidence; and the above-discussed statements during closing argument.  As discussed, Fletcher has not shown "there would be a miscarriage of justice or ... the weight of

7

evidence preponderates against the verdict".  ***United States v. O'Keefe***, 128 F.3d 885, 898 (5th Cir. 1997) (internal citations and quotation marks omitted).  Accordingly, the district court did not abuse its discretion in denying the motion.

***AFFIRMED***