[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 10, 2011
JOHN LEY
CLERK

_____

No. 10-11996
Non-Argument Calendar
_____

D.C. Docket No. 1:09-cr-20462-ASG-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILMER QUESADA-RAMOS,

Defendant-Appellant.

_____

No. 10-12577
Non-Argument Calendar
_____

D.C. Docket No. 1:09-cr-20462-ASG-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JUAN GONZALEZ,

Defendant-Appellant.

Appeals from the United States District Court
for the Southern District of Florida

(June 10, 2011)

Before EDMONDSON, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Wilmer Quesada-Ramos and Juan Gonzalez appeal their convictions for conspiring to destroy, 18 U.S.C. § 844(n), and destroying by fire a building used in interstate commerce, id. §§ 2, 844(i). Ramos and Gonzalez challenge the sufficiency of the evidence to support their convictions and the reasonableness of their sentences. Gonzalez also challenges the denial of defense counsel's pre-trial motion to withdraw, the admission of expert testimony, and a closing argument of the United States. We affirm.

A jury reasonably could have found based on the circumstantial evidence presented by the government that Ramos and Gonzalez conspired to commit and committed arson. Officers arrived around 11:00 p.m. on February 4, 2009, to investigate an alarm activated in a carpet warehouse located in downtown Hialeah, Florida, and discovered a fire that had been started by pouring gasoline through a window onto rolls of carpet. The first two officers on the scene saw Ramos in his

red truck with its dim headlights drive out of a nearby alley. Ramos fled and led one officer on a high speed chase through four traffic lights before the officer stopped the truck at a crowded intersection. See United States v. Miranda, 425 F.3d 953, 959 (11th Cir. 2005) (presence at the scene is probative); United States v. Borders, 693 F.2d 1318, 1324–25 (11th Cir. 1982) (flight suggests consciousness of guilt). Inside the truck, the officer discovered Ramos's cellular telephone and a wallet containing Gonzalez's driver's license and receipts from two gas stations where Gonzalez had purchased $60 in gasoline within three hours of the fire. Although Ramos denied that he knew Gonzalez, investigators later discovered that Gonzalez was Ramos's uncle, Gonzalez had worked for years as a subcontractor for the owner of the warehouse, Gonzalez had fought with the owner about salary deductions in the two months preceding the fire, and Ramos had helped Gonzalez install storage racks inside the warehouse. See United States v. Molina, 443 F.3d 824, 828 (11th Cir. 2006) (the "existence of an agreement" can be "proved by inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme"). Gonzalez, who lived many miles away, also was seen by police officers near the warehouse at the time of the fire, fled when officers at two different locations attempted to question him, see Borders, 693 F.2d at 1324, and, when apprehended, was "really dusty," coughed

3

incessantly, had soot on his face and singed hair in his nose, and spit up "blackish mucus," see Miranda, 425 F.3d at 959. Gonzalez gave vague explanations for his symptoms and for his presence near the warehouse, and a fragment of DNA on a t-shirt found at the scene shared 20 characteristics with Gonzalez's DNA. A police officer seized from Gonzalez a cigarette lighter and a cell phone, which Gonzalez had used "pretty close" to the warehouse at 10:22 p.m. and at 11:19 p.m. Records for Ramos's cellular telephone established that he had driven to Hialeah the night of the fire, where he had made calls between 10:30 p.m. and 11:20 p.m. Although investigators did not discover any accelerant on Ramos's clothing or on any objects in his truck, a trained dog alerted to the presence of an accelerant in the bed of his truck. The evidence and reasonable inferences from that evidence supports the finding of the jury that Ramos and Gonzalez agreed to burn the warehouse, the two men transported in Ramos's truck some supplies to start the fire, Ramos waited in the truck while Gonzalez set the warehouse on fire, and the two men fled separately from the scene. "'A jury is free to choose among reasonable constructions of the evidence,'" United States v. Hernandez, 433 F.3d 1328, 1334 (11th Cir. 2005) (quoting United States v. Bell, 678 F.2d 547, 549 (5th Cir. 1982) (en banc)), and the jury rejected the defenses presented by Gonzalez and Ramos.

4

Gonzalez argues that his trial was unfair because the district court refused to allow defense counsel to withdraw, but we disagree. Although a defendant is entitled to counsel of his choice, "[t]he right to choose counsel may not be subverted to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice," Gandy v. Ala., 569 F.2d 1318, 1323 (5th Cir. 1978), which appeared to be Gonzalez's strategy. Gonzalez retained defense counsel and was satisfied with his representation until two weeks before trial when Gonzalez told counsel that he had hired a new attorney. Gonzalez presented no definitive proof that a new attorney was available, or even existed. The new attorney never filed a notice of appearance, failed to respond to defense counsel's voice messages, and did not appear at the hearing on the motion to withdraw. Defense counsel said that he and Gonzalez had had a "large disagreement in the case," but the district court was never told the nature of that disagreement and reasonably determined that the motion was an "attempt[] to manipulate the court's schedule by a last minute switch of attorneys or selection of an unavailable attorney," id. at 1328. The district court also reasonably determined that defense counsel, who was prepared for trial, would represent Gonzalez adequately, and that proceeding to trial would best protect codefendant Ramos's right to a speedy trial. See United States v. Calderon, 127 F.3d 1314, 1343 (11th Cir. 1997). Gonzalez argues that he

had the "right to 'face trial alone' rather than proceed with unwanted counsel," but Gonzalez never asked to proceed pro se, and "[d]efendants are only guaranteed a fair or reasonable opportunity to select the attorney of their choice," United States v. Baker, 432 F.3d 1189, 1248 (11th Cir. 2005). The district court has "wide latitude in balancing the right to counsel of choice against the needs of fairness . . . and against the demands of its calendar," United States v. Gonzalez-Lopez, 548 U.S. 140, 152, 126 S. Ct. 2557, 2565–66 (2006), and the district court did not abuse its discretion by denying the motion to withdraw.

Gonzalez argues that he was denied a fair trial because the district court allowed Officer Ross Holt to testify as an expert witness, but we disagree. As long as the testimony establishes that an expert witness has "a reliable basis in the knowledge and experience of his discipline" to provide an opinion, he is "permitted wide latitude to offer opinions." Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 592, 113 S. Ct. 2786, 2796 (1993). The United States told Gonzalez before trial that Holt would testify that his trained dog alerted to the bed of Ramos's truck, see Fed. R. Crim. P. 16, and the United States offered Holt as an expert witness before he testified about his dog's response, see Fed. R. Evid. 702; Guinn v. AstraZeneca Pharm. LP, 602 F.3d 1245, 1252 (11th Cir. 2010). The United States established that Holt was qualified to testify that his trained dog

6

could detect accelerants not perceptible in a laboratory, the district court limited the scope of Holt's testimony, and Gonzalez was permitted to cross-examine Holt about his opinion. See Daubert, 509 U.S. at 596, 113 S. Ct. at 2798. The district court did not abuse its discretion in admitting Holt's testimony.

Gonzalez also argues that the prosecutor "improperly vouch[ed] for [his] case," but we again disagree. Prosecutorial misconduct occurs when counsel makes statements that "'prejudicially affect the substantial rights of the defendant'" and create "'a reasonable probability . . . that, but for the remarks, the outcome of the trial would have been different.'" United States v. Lopez, 590 F.3d 1238, 1256 (11th Cir. 2009) (quoting United States v. Eckhardt, 466 F.3d 938, 947 (11th Cir. 2006)). Gonzalez contends that he was prejudiced when the prosecutor stated that specific tests were performed "to make sure that these defendants were the ones that did it," but the statement was a fair response to Gonzalez's criticisms of the tests performed and his arguments that tests were not conducted that would have weakened the case against him. See id.

Gonzalez also complains about the prosecutor's argument that the United States had "interviewed countless witnesses, . . . tested numerous items over the course of months, [and] collected all kinds of evidence even stuff you didn't get a chance to see," but any error was harmless. This argument was intended to

respond to Gonzalez's arguments that the investigation was incomplete. See id. The prosecutor did not mention any evidence that was not presented to the jury, the district court instructed the jury "to not speculate on any evidence that [it] did not see," and the United States presented "'sufficient independent evidence of guilt,'" id. (quoting Eckhardt, 466 F.3d at 947).

Gonzalez and Ramos also argue that their sentences are procedurally and substantively unreasonable, but we disagree. Gonzalez did not object to the facts in his presentence investigation report that he had "orchestrated the plan to set fire to [the warehouse] and recruited [Ramos] to assist him in accomplishing this," and those facts are sufficient to enhance Gonzalez's base offense level by two points for his role as an organizer or leader. See United States v. Turner, 626 F.3d 566, 572 (11th Cir. 2010). The district court considered the sentencing range of 78 to 97 months, the sentencing factors, and Gonzalez's arguments about his childhood and health and reasonably determined that an upward variance to 115 months of imprisonment would address the "seriousness of [the] fire, the danger it posed to those who had to confront it as firefighters, . . . the very serious risk to other property nearby," "the injury to [an] officer" who chased Gonzalez, "the risk to others in [his] apprehension," and Gonzalez's "criminal history and escalating criminality." Ramos argues that the district court "failed to adequately explain

8

[its] chosen sentence," <u>see</u> 18 U.S.C. § 3553(c), but the district court stated that its sentence was based on the "great danger" that the fire caused to firefighters "as well as additional properties in the area," the destruction the fire caused, Ramos's decision to "engage[] in the very kind of high-speed chase . . . that put[s] . . . officers at risk," and the "need to provide a just punishment." The district court reasonably determined that a within-guidelines sentence of 70 months of imprisonment was required to punish Ramos for his crimes and deter similar future misconduct. The district court did not abuse its discretion in sentencing Gonzalez and Ramos.

The convictions and sentences of Gonzalez and Ramos are **AFFIRMED**.