[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 22-10910

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

VICTOR RICARDO GRANT,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:20-cr-00050-WFJ-CPT-1

————————————————

Before NEWSOM, GRANT, and LAGOA, Circuit Judges.

PER CURIAM:

Victor Ricardo Grant appeals his conviction for one count of possessing ammunition as a felon and his corresponding 262-month sentence of imprisonment.  On appeal, Grant makes two arguments.  First, he argues that the district court erred in denying his motion for judgment of acquittal because there was insufficient evidence for a jury to find that he possessed the ammunition.  Second, he contends, for the first time on appeal, that the district court erred at sentencing when it found that his prior state drug convictions constituted "serious drug offense[s]" under the Armed Career Criminal Act ("ACCA"), because federal drug schedules did not prohibit the conduct underlying those convictions at the time of his federal ammunition offense.  After careful review, we affirm.

## I.

A federal grand jury indicted Grant for knowingly possessing ammunition after having been convicted of a felony in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).

Grant proceeded to trial, and the parties stipulated that Grant had been convicted of felonies and had no right to possess a firearm or ammunition.  At  trial, FBI special agent Sarah Andreasen testified about a SWAT team's lawful search of Grant's family residence.  Andreasen testified that the residence's master bedroom had two closets, with the closet to the left containing female clothing and a closet to the right containing male clothing.  The right-

side closet with male clothing contained a black backpack, which itself contained four orange traffic vests, fifteen boxes of 7.62-millimeter ammunition, a plastic bag with additional ammunition, and earplugs. Law enforcement discovered a laundry receipt with Grant's name on it near the backpack. The residence's attic, the master bedroom's left-side closet, and a purse in the living room that belonged to Grant's wife all also contained ammunition.

Another law enforcement officer testified that he observed Grant take a black backpack out of his car and wear it at least four or five times when returning to his residence. Other detectives observed the same pattern of Grant taking the backpack out of his car and wearing it. An employee of the Hillsborough County Sheriff's Office testified that her unit did not find fingerprints on the ammunition uncovered by law enforcement. And a forensic analyst for the FBI testified that the agency did not recover DNA from the ammunition.

After the government rested, Grant moved for a judgment of acquittal, arguing that no reasonable juror could find that he possessed the ammunition seized by law enforcement. The district court denied the motion.

Grant then called his wife, Melissa Grant, as a witness. She testified that she moved her husband's black backpack from the living room to his closet before the search. She confirmed that the master bedroom's right-side closet containing male clothes was exclusively her husband's.

Grant also testified in his own defense. He testified that he knew nothing about and never possessed the ammunition seized by law enforcement. He acknowledged that the right-side closet was his, but he testified that he did not recall ever seeing or knowing about the black backpack found in the closet. Grant also admitted, however, that he used a black backpack to take spare clothes to work.

Grant renewed his motion for judgment of acquittal after the defense rested and again at the end of trial. The district court denied the motion both times. The jury returned a verdict finding Grant guilty.

The presentence investigation report ("PSI") described Grant's offense conduct by reference to the evidence presented at trial. Based on these facts, the PSI initially calculated a base offense level of 20, pursuant to U.S.S.G. § 2K2.1and added two points for obstruction of justice under U.S.S.G. § 3C1.1 based on Grant's false statements under oath about his offense. The PSI also applied an armed career criminal offense level enhancement under U.S.S.G. § 4B1.4 because Grant had at least three prior convictions for a violent felony or serious drug offense and was thus subject to an enhanced sentence under 18 U.S.C. § 924(e). The PSI applied the enhancement based on the following convictions: three in December 2001 for the sale of cocaine, and one for aggravated assault in 2005. Grant committed the three drug offenses on separate occasions in February and May of 2001. After this enhancement was applied, the PSI calculated a total offense level of 33 for Grant.

The PSI further calculated that Grant had a criminal history score of 10, establishing a criminal history category of V under U.S.S.G. § 4B1.4(c)(1). Based on Grant's total offense level of 33 and criminal history category of V, the PSA calculated that Grant's guideline range was 210 to 262 months' imprisonment, subject to a statutory minimum of 15 years imprisonment. Before sentencing, Grant objected to the PSI's obstruction-of-justice enhancement. But Grant did not object to the PSI's finding that his state drug convictions qualified as "serious drug offense[s]" under the ACCA.

At the sentencing hearing, the district court found that the PSI properly calculated Grant's guideline range and therefore overruled Grant's objection to the obstruction-of-justice enhancement. Grant sought a downward variance and a sentence of only 185 months' imprisonment or, alternatively, a sentence at the low end of his guidelines range. Grant, again, did not object to the PSI's determination that his state drug convictions were "serious drug offense[s]" under the ACCA. The government argued that Grant should be sentenced at the high end of his guidelines range given the totality of the circumstances of the case. The district court then sentenced Grant to 262 months' imprisonment, followed by five years of supervised release. After sentencing Grant, the district court asked if Grant had any further objections, and Grant's counsel answered that he did not.

This timely appeal ensued.

**II.**

We review *de novo* the denial of a defendant's properly preserved motion for judgment of acquittal, "viewing the evidence in the light most favorable to the government and drawing all reasonable factual inferences in favor of the jury's verdict." *United States v. Jiminez*, 564 F.3d 1280, 1284 (11th Cir. 2009). We will uphold the district court's denial of a motion for judgment of acquittal "if a reasonable trier of fact could conclude that the evidence establishes the defendant's guilt beyond a reasonable doubt." *United States v. Rodriguez*, 218 F.3d 1243, 1244 (11th Cir. 2000). "It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Vera*, 701 F.2d 1349, 1357 (11th Cir. 1983) (alteration omitted) (quoting *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc)). This is so because "[a] jury is free to choose among reasonable constructions of the evidence." *Id.* (quoting *Bell*, 678 F.2d at 549). Thus, "we must sustain the verdict where there is a reasonable basis in the record for it." *United States v. Farley*, 607 F.3d 1294, 1333 (11th Cir. 2010) (quoting *United States v. Brown*, 415 F.3d 1257, 1270 (11th Cir. 2005)).

"The test for sufficiency of evidence is identical regardless of whether the evidence is direct or circumstantial, and 'no distinction is to be made between the weight given to either direct or circumstantial evidence.'" *United States v. Mieres-Borges*, 919 F.2d 652, 656–57 (11th Cir. 1990) (quoting *United States v. Gonzalez*, 719 F.2d 1516, 1521 (11th Cir. 1983)). But when "the government relies on

circumstantial evidence, reasonable inferences, not mere specula-tion, must support the conviction." *United States v. Mendez*, 528 F.3d 811, 814 (11th Cir. 2008).

We generally review *de novo* challenges to an enhancement under the ACCA. *United States v. Smith*, 983 F.3d 1213, 1222 (11th Cir. 2020). When a defendant does not state the grounds for an objection in the district court, however, we review for plain error. *United States v. Zinn*, 321 F.3d 1084, 1087 (11th Cir. 2003). To prevail under plain-error review, a defendant must demonstrate "that there is: '(1) error, (2) that is plain, and (3) that affects substantial rights.'" *United States v. Jones*, 743 F.3d 826, 829 (11th Cir. 2014) (quoting *United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005)). Once the defendant makes that showing, we have discretion to no-tice the forfeited error "only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quoting *Rodriguez*, 398 F.3d at 1298).

## III.

To convict a defendant of being a felon in possession of am-munition under 18 U.S.C. § 922(g)(1), the government must prove beyond a reasonable doubt that (1) the defendant knowingly pos-sessed a firearm or ammunition, (2) the defendant was a felon, and (3) the firearm or ammunition was in or affecting interstate com-merce. *United States v. Green*, 873 F.3d 846, 852 (11th Cir. 2017).

Possession can be actual or constructive. *See United States v. Ochoa*, 941 F.3d 1074, 1104–05 (11th Cir. 2019) (concluding that the jury had sufficient evidence to find that the defendant

constructively possessed ammunition after tying him to the bedroom where it was found through his phones, personal identification cards, and travel papers in the room, along with a driver's license that bore the address of the residence in question). Constructive possession may be exclusive or shared with others. *See United States v. Flanders*, 752 F.3d 1317, 1332 (11th Cir. 2014). To establish constructive possession, whether exclusive or joint, the government must offer evidence showing that the "defendant has ownership, dominion, or control over an object or the premises where the object is found." *Id.* "[A] defendant's mere presence in the area of [an object] or awareness of its location is not sufficient to establish possession." *Green*, 873 F.3d at 852–53 (second alteration in original) (quoting *United States v. Beckles*, 565 F.3d 832, 841 (11th Cir. 2009)). A defendant has constructive possession of ammunition or a firearm if the government proves, either through direct or circumstantial evidence, that he "(1) was aware or knew of [its] presence and (2) had the ability and intent to later exercise dominion and control over [it]." *United States v. Perez*, 661 F.3d 568, 576 (11th Cir. 2011); *see also United States v. Molina*, 443 F.3d 824, 830 (11th Cir. 2006) (reversing a grant of judgment of acquittal where a reasonable jury could have found that the defendant exerted dominion or control over a firearm because it was in her bedroom nightstand that also contained her passport).

We have also held that if a defendant takes the stand and testifies, the factfinder not only does not have to believe his testimony, but it can also take the opposite position and consider his testimony as evidence of his guilt. *See United States v. Hughes*, 840 F.3d 1368,

1385 (11th Cir. 2016) ("[A] statement by a defendant, if disbelieved by the jury, may be considered as substantive evidence of the defendant's guilt." (quoting *United States v. McDowell*, 250 F.3d 1354, 1367 (11th Cir. 2001))).

Viewing the evidence in the light most favorable to the government, we conclude that the district court properly denied Grant's motion for judgment of acquittal because the evidence was sufficient for a reasonable jury to find beyond a reasonable doubt that he constructively possessed the ammunition. *See Jiminez*, 564 F.3d at 1284. The evidence elicited at trial showed that law enforcement found the ammunition in Grant's closet, inside his black backpack, and near a laundry receipt with his name on it. That evidence permitted a reasonable inference that Grant constructively possessed the ammunition. *See, e.g.*, *Ochoa*, 941 F.3d at 1105; *Molina*, 443 F.3d at 829–830; *see also United States v. Brown*, 587 F.3d 1082, 1091–92 (11th Cir. 2009) (holding that sufficient evidence supported jury's finding that the defendant possessed a firearm when law enforcement found seven firearms in a bedroom closet and the defendant's identification cards in the bedroom).

And despite Grant's testimony that he did not know about the ammunition in the closet and that his wife put the backpack in his closet, the jury was entitled to disbelieve him. *See Hughes*, 840 F.3d at 1385. The jury likewise was entitled to view his testimony as substantive evidence of his guilt. *See id*. Indeed, Grant's testimony that he wore a black backpack to work, viewed in the light most favorable to the jury's verdict, supported the government's

argument that Grant possessed the ammunition in the backpack found in his closet.

We thus affirm the district court's denial of Grant's motion for judgment of acquittal.

## IV.

Grant also appeals his sentence on the ground that his prior state drug convictions were not "serious drug offense[s]" within the meaning of the ACCA. The ACCA requires that any person who violates 18 U.S.C. § 922(g) serve a mandatory minimum sentence of fifteen years when the defendant has three prior convictions for violent felonies or serious drug offenses committed on occasions different from one another. 18 U.S.C. § 924(e)(1). The ACCA defines a "serious drug offense," in relevant part, as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802))." *Id.* § 924(e)(2)(A)(ii). We have held that federal law governs the meaning of terms in the ACCA and state law governs the elements of state law crimes. *Jackson v. United States* (*Jackson II*), 55 F.4th 846, 850 (11th Cir. 2022), *cert. granted*, 143 S. Ct. 2457 (2023).

Section 102 of the Controlled Substances Act defines a "controlled substance" as any substance on the federal controlled substances schedules. *See* 21 U.S.C. §§ 802(6), 812. The current version of the federal drug schedules expressly excludes ioflupane. 21 C.F.R. § 1308.12(b)(4)(ii). But the federal drug schedules included ioflupane until 2015. *Jackson II*, 55 F.4th at 851 & n.4.

At the time of Grant's drug offenses in February and May 2001, the list of "controlled substances" in Florida included "[c]ocaine or ecgonine, including any of their stereoisomers, and any salt, compound, derivative, or preparation of cocaine or ecgonine." Fla. Stat. § 893.03(2)(a)(4) (amendments effective from October 1, 2000, to June 30, 2001). It did not specifically include or exclude ioflupane. *Id.*

We apply the categorical approach to determine whether a defendant's state conviction is a serious drug offense under the ACCA. *Jackson II*, 55 F.4th at 850. Under the categorical approach, we consider the statutory definition of the state offense rather than the facts of the crime itself. *Id.* A state conviction qualifies only if the state statute under which the conviction occurred defines the offense in the same way as, or more narrowly than, the ACCA's definition of a serious drug offense. *Id.*

In *Jackson I*, decided in June 2022 after Grant's sentencing, we vacated a defendant's ACCA-enhanced sentence, holding that his Florida cocaine-related offenses did not qualify as serious drug offenses under the ACCA. *United States v. Jackson* (*Jackson I*), 36 F.4th 1294, 1306 (11th Cir. 2022). We determined that the federal controlled substances schedules that defined a serious drug offense under the ACCA were those in effect when the defendant committed his federal offense and that those schedules did not cover ioflupane at the time he committed his federal offense. *See id.* at 1299–302. Since the relevant Florida statute covered ioflupane when he was convicted of his prior cocaine-related offenses, we

held that the state statute was broader than the relevant version of the federal controlled substances schedules, and the defendant's prior cocaine-related convictions thus did not qualify as serious drug offenses. *Id*. at 1303–04.

In December 2022, however, we vacated our decision in *Jackson I* and held, in *Jackson II*, that the defendant's Florida cocaine-related convictions qualified as serious drug offenses. *Jackson II*, 55 F.4th at 861–62. We held that the ACCA's definition of a serious drug offense incorporates the version of the federal controlled substances schedules in effect when the defendant was convicted of the prior state drug offense. *Id*. at 854. We then concluded that the defendant's 1998 and 2004 Florida cocaine-related convictions qualified because Florida's controlled substances schedules included ioflupane until 2017 and the federal controlled substance schedules also included ioflupane until 2015. *Id*. at 851 & nn.3–4. We determined that the Florida controlled substances schedules included ioflupane because Florida later amended its schedules to exclude ioflupane. *Id*. at 851 n.3. Jackson then sought certiorari, which the Supreme Court granted in May 2023. The Supreme Court also consolidated *Jackson II* with another case, *see United States v. Brown*, 47 F. 4th 147 (3d Cir. 2022), *cert. granted*, 143 S. Ct. 2458 (2023), and the cases remain pending.

Again, because Grant did not object to the PSI's finding that his state drug convictions qualified as "serious drug offense[s]" under the ACCA, we review his ACCA enhancement for plain error. *Zinn*, 321 F.3d at 1087.

Grant concedes that, under our current precedent, the district court committed no error in applying an ACCA enhancement to his sentence. Grant acknowledges that our decision in *Jackson II* forecloses his argument that his prior state drug convictions were not serious drug offenses because the federal and Florida drug schedules in effect at the time of those convictions included ioflupane. That concession fully resolves Grant's appeal because we, as a panel, are bound by *Jackson II*'s holding. Under our prior precedent rule, we must follow a prior panel precedent "unless and until it is overruled by this court en banc or by the Supreme Court." *United States v. Brown*, 342 F.3d 1245, 1246 (11th Cir. 2003). Although the Supreme Court will soon review *Jackson II*, a grant of certiorari by the Supreme Court does not in itself change the law. *See Rutherford v. McDonough*, 466 F.3d 970, 977 (11th Cir. 2006).

In addition, the error that Grant asserts the district court committed was not plain. We have made clear that "[w]here the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it." *United States v. Verdeza*, 69 F.4th 780, 791 (11th Cir. 2023) (quoting *United States v. Chau*, 426 F.3d 1318, 1322 (11th Cir. 2005)). Indeed, an error qualifies as plain only if it is "'obvious' or 'clear under current law.'" *United States v. Laines*, 69 F.4th 1221, 1233 (11th Cir. 2023) (quoting *United States v. Candelario*, 240 F.3d 1300, 1309 (11th Cir. 2001)). Here, we have directly resolved the relevant issue *against* Grant's position. *See Jackson II*, 55 F.4th at 854, 861–62. And because the district court's decision to enhance Grant's sentence under the

ACCA is consistent with our current law, the alleged error is, by definition, not plain. *See, e.g.*, *Laines*, 69 F.4th at 1233–34 (holding that the defendant did not carry his burden of showing plain error because our precedents expressly rejected his argument that an error occurred, and he did not identify any decision abrogating or overruling these precedents).

In short, we conclude that the district court did not plainly err when it enhanced Grant's sentence under the ACCA. Accordingly, we affirm Grant's sentence.

**AFFIRMED.**